2023-2094

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

CORINTH PIPEWORKS PIPE INDUSTRY S.A., AND CPW AMERICA CO.,

Plaintiffs-Appellants

v.

UNITED STATES, THE AMERICAN LINE PIPE PRODUCERS ASSOCIATION TRADE COMMITTEE,

Defendants-Appellees.

---

Appeal from the United States Court of International Trade in
Case No.  22-cv-00063, Senior Judge Leo M. Gordon

---

### BRIEF OF DEFENDANT-APPELLEE THE UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
CHRISTOPHER KIMURA
Office of the Chief Counsel for
Trade Enforcement & Compliance
Department of Commerce

ERIC J. SINGLEY
Trial Attorney
U.S. Department of Justice
Civil Division
PO Box 480

Ben Franklin Station
Washington D.C. 20044
Email: eric.j.singley@usdoj.gov

December 13, 2023

*Attorneys for Defendant-Appellee*
*United States*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF RELATED CASES ................................................. vii

STATEMENT OF THE ISSUE ............................................................ 1

STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS .............. 1

    I.    Nature Of The Case ............................................................ 1

    II.   Legal And Regulatory Framework ...................................... 2

        A.    Statutory Framework For Calculation Of Antidumping Duties ..................................................................... 2

        B.    Legal Framework For Application Of Adverse Facts Available ................................................................... 4

    III.   Statement Of Facts And Course Of Proceedings Below ..................... 8

        A.    Administrative Proceedings Before Commerce........................ 8

        B.    Proceedings Before The Trial Court ....................................... 13

SUMMARY OF THE ARGUMENT ................................................... 15

ARGUMENT ....................................................................................... 17

    I.    Standard of Review........................................................... 17

    II.   Commerce's Decision To Apply Facts Available With An Adverse Inference Was Supported By Substantial Evidence And Consistent With Law, Including With 19 U.S.C. § 1677m(g) ............................ 18

i

III.     Commerce Properly Applied Facts Available With An Adverse
         Inference To Corinth ......................................................................... 25

         A.     Corinth Repeatedly Failed To Provide Requested Information
                Detailing Its Cost Of Production For LDWP .......................... 25

         B.     Corinth Fails To Identify Any Legal Error in Commerce's
                Determination To Resort To Facts Available .......................... 30

         C.     Commerce Appropriately Relied On Total Adverse Facts
                Available ................................................................................. 35

         D.     Corinth's Remaining Arguments Have Been Waived And, In
                Any Event, Lack Merit ........................................................... 36

CONCLUSION ................................................................................ 40

# TABLES OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
  802 F.3d 1339 (Fed. Cir. 2015) ...........................................................................20

*Atl. Sugar, Ltd. v. United States*,
  744 F.2d 1556 (Fed. Cir. 1984) ...........................................................................21

*Carpenter Tech. Corp. v. United States*,
  477 F. Supp. 3d 1356 (Ct. Int'l Trade 2020)................................................26, 27

*CC Metals & Alloys, LLC v. United States*,
  145 F. Supp. 3d 1299 (Ct. Int'l Trade 2016) ..................................................... 26

*Consolidated Edison Co. v. NLRB*,
  305 U.S. 197 (1938).............................................................................................20

*Consolo  v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966).......................................................................................20, 21

*Corinth Pipeworks Pipe Indus. S.A. v. United States*,
  633 F. Supp. 3d 1314 (Ct. Int'l Trade 2023) ...................................................1, 15

*Corinth relies on Koyo Seiko Co., Ltd. v. United States*,
  516 F. Supp. 3d 1323 (Ct. Int'l Trade 2007).......................................................24

*Fujitsu Gen. Ltd. v. United States*,
  88 F.3d 1034 (Fed. Cir. 1996) .......................................................................21, 38

*Government of Argentina v. United States*,
  542 F. Supp. 3d 1380 (Ct. Int'l Trade 2022).......................................................27

*Home Prods. Int'l. Inc. v. United States*,
  556 F. Supp. 2d 1338 (Ct. Int'l Trade 2008).......................................................25

*Hyundai Elec. & Energy Sys. Co. v. United States*,
  15 F.4th 1078 (Fed. Cir. 2021) ...........................................................................39

*Hyundai Elec. & Energy Sys. Co. v. United States,*
    466 F. Supp. 3d 1303 (Ct. Int'l Trade 2020)............................................38, 39, 41

*Hyundai Elec. & Energy Sys. v. United States,*
    2022 U.S. App. LEXIS 22235 (Fed. Cir. 2022)............................................41, 42

*In re Jolley,*
    308 F.3d 1317 (Fed. Cir. 2002) ...........................................................................38

*JBF RAK LLC v. United States,*
    991 F. Supp. 2d 1343 (Ct. Int'l Trade 2014)........................................................27

*Jiaxing Brother Fastener Co. v. United States,*
    822 F. 3d 1289 (Fed. Cir. 2016) ..........................................................................25

*Koyo Seiko Co., Ltd. v. United* States,
    516 F. Supp. 3d 1323 (Ct' Int'l Trade 2007). ................................................24, 25

*Maverick Tube Corp. v. United States,*
    857 F.3d 1353 (Fed. Cir. 2017) ............................................................................ 8

*Mukand, Ltd. v. United States,*
    37 CIT 443 (Ct. Int'l Trade 2013) .......................................................................45

*Mukand, Ltd. v. United States,*
    767 F.3d 1300 (Fed. Cir. 2014) ............................................................................ 8

*Myland Indus., Ltd. v. United States,*
    31 C.I.T. 1696 (Ct. Int'l Trade 2007).............................................................passim

*Nan Ya Plastics Corp. Ltd. v. United States,*
    810 F.3d 1333 (Fed. Cir. 2016) ...............................................................7, 36, 45

*Nan Ya Plastics Corp. v. United States,*
    906 F. Supp. 2d 1348 (Ct. Int'l Trade 2013)........................................................26

*Nippon Steel Corp. v. United States,*
    337 F.3d 1373 (Fed. Cir. 2003) ....................................................................passim

*Nippon Steel Corp. v. United States,*
  458 F.3d 1345 (Fed. Cir. 2006) ..........................................................20

*Novosteel SA v. United States,*
  284 F.3d 1261 (Fed. Cir. 2002) ..........................................................43

*Pokarna Engineered Stone Ltd. v. United States,*
  56 F.4th 1345 (Fed. Cir. 2023) ..........................................................38

*Pro-Team Coil Nail Enterprise, Inc. v. United States,*
  483 F. Supp. 3d 1242 (Ct. Int'l Trade 2020) ................................39, 40

*Shikoku Chems. Corp. v. United States,*
  795 F.Supp. 417 (1992) .....................................................................24

*SKF USA Inc. v. United States,*
  537 F.3d 1373 (Fed. Cir. 2008) ..........................................................24

*SKF USA Inc. v. United States,*
  391 F. Supp. 2d 1327 (Ct. Int'l Trade 2005) .......................................45

*Ta Chen Stainless Steel Pipe, Inc. v. United States,*
  298 F.3d 1330 (Fed. Cir. 2002) ........................................................... 9

*Tri-Union Frozen Prods., Inc. v. United States,*
  163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) .......................................22

*Union Steel v. United States,*
  713 F.3d 1101 (Fed. Cir. 2013)....................................................20, 36

*Woodford v. Ngo,*
  548 U.S. 81 (2006)..............................................................................43

*Zhejiang Dunan Hetian Metal Co. v. United States,*
  652 F.3d 1333 (Fed. Cir. 2011).........................................................41

## **STATUTES**

19 U.S.C. § 1673.................................................................................. 2

v

19 U.S.C. § 1673a ................................................................ 2

19 U.S.C. § 1675 .................................................................. 3

19  U.S.C. § 1675(a)(3) ........................................................ 4

19 U.S.C. § 1677(9) .............................................................. 6

19 U.S.C. § 1677b(b) ........................................................... 2

19 U.S.C. § 1677b(b)(1) ....................................................... 2

19 U.S.C. § 1677b(f)(1)(A) ...................................................28

19 U.S.C. § 1677e ................................................................ 5

19 U.S.C. § 1677e(a) .....................................................passim

19 U.S.C. § 1677e(b) .....................................................passim

19 U.S.C. § 1677e(b)(2) .......................................................17

19 U.S.C. § 1677m(c) ..........................................................43

19 U.S.C. § 1677m(d) ......................................................8, 44

19 U.S.C. § 1677m(e) .......................................................... 9

19  U.S.C. § 1677m(e)(2) ...................................................... 5

19 U.S.C. § 1677m(g) ....................................................passim

19 U.S.C. § 3512(d) ............................................................. 7

28 U.S.C. § 2637(d) .............................................................43

## REGULATIONS

19 C.F.R. § 351.204(d) ................................................................... 4

19 C.F.R. § 351.205(a) ................................................................... 3

19 C.F.R. § 207 ............................................................................. 3

19 C.F.R. § 351.213 ...................................................................... 4

19 C.F.R. § 351.301 ....................................................................4, 5

19 C.F.R. § 351.307 ....................................................................4, 5

19 C.F.R. § 351.307(d) ................................................................. 5

19 C.F.R. § 351.308(d) ..............................................................17, 18

## OTHER AUTHORITIES

*Large Diameter Welded Pipe From Greece:  Final Results of Antidumping Duty Administrative Review; 2019-2020*,
   87 Fed. Reg. 7120 (Dep't of Commerce February 8, 2022) ...............................11

*Large Diameter Welded Pipe From Greece*,
   87 Fed. Reg. 7,120 (Dep't of Commerce Feb. 8, 2022) ....................................... 1

*Large Diameter Welded Pipe From Greece:  Preliminary Results of Antidumping Administrative Review; 2019-2020*,
   86 Fed. Reg. 43172 (Dep't of Commerce August 6, 2021) ............................... 12

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   85 Fed. Reg. 41540 (Dep't of Commerce July 10, 2020) .................................... 9

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Rule 47.5 of the Rules of this Court, counsel for defendant-appellee, the United States, is unaware of any appeal in or from this action that was previously before this Court, or any other appellate court, under the same or similar title.  Counsel is also not aware of any other case pending in this or any other court or agency that may directly affect or be affected by the decision in this appeal.

## STATEMENT OF THE ISSUE

Whether the U.S. Department of Commerce's (Commerce) determination to use facts available with an adverse inference to determine a dumping margin for plaintiff-appellant Corinth Pipeworks Pipe Industry S.A. (Corinth) is supported by substantial evidence and in accordance with law, where Corinth failed to submit its cost reconciliation in the form and manner requested and failed to reconcile its cost data.

## STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS

### I.    Nature Of The Case

Corinth appeals the final judgment of the United States Court of International Trade in *Corinth Pipeworks Pipe Industry SA*, et al. *v. United States*, 633 F. 3d 1314 (Ct. Int'l Trade 2023).  Appx1.  The trial court sustained Commerce's first administrative review results for the antidumping duty order covering large diameter welded pipe (LDWP) from Greece.  *See Large Diameter Welded Pipe From Greece*, 87 Fed. Reg. 7,120 (Dep't of Commerce Feb. 8, 2022) (final results admin. review) (*Final Results*), Appx09023-09025, and accompanying Issues and Decision Memorandum (Dep't of Commerce Feb 2, 2022).  Appx08993-09014.

1

II.    **Legal And Regulatory Framework**

A.    **Statutory Framework For Calculating Antidumping Duties**

The Tariff Act of 1930 establishes a remedial regime to combat unfair trade practices.  Under that regime, Commerce imposes duties upon imported products that are sold—or likely to be sold—in the United States "at less than fair value" to the detriment of a domestic industry.  19 U.S.C. §§ 1673; 1677(34).  When an interested party files a petition on behalf of a United States industry claiming that imported products are being dumped, if the standards are met, Commerce initiates an antidumping duty investigation.  19 U.S.C. § 1673a.  As part of that investigation, Commerce calculates the "normal value" of the imported goods, *i.e.*, the home market value, and compares that price with the price at which the imported goods are sold in the United States.  *See id.* §§ 1677(35), 1677b(a).

To ensure that the normal value is an appropriate benchmark against which to measure whether sales to the United States are dumped, Commerce tests the normal value sales to determine if they are made below cost.  19 U.S.C. § 1677b(b).  Commerce calculates a respondent specific per unit cost of production of the merchandise and compares it to the normal value sales to ensure they are made above cost.  Below cost sales are "disregarded in the determination of normal value."  19 U.S.C. § 1677b(b)(1).

2

Using the normal value sales that are made above cost, if Commerce finds that a foreign producer or importer is selling its good for less than these normal value sales, it makes an affirmative determination of dumping. The United States International Trade Commission (ITC), in turn, determines whether such dumping has "materially injured" or threatened material injury to a United States industry. *Id.* § 1673d(b)(1).

If Commerce makes a final determination that "the subject merchandise is being, or is likely to be, sold in the United States at less than its fair value," and if the ITC makes a final determination that a U.S. industry has suffered injury or is threatened with material injury, Commerce issues an antidumping duty order. *Id.* 19 U.S.C. § 1673d(a)(1), (b)(1), (c)(2); *see also* 19 C.F.R. pt. 207; 19 C.F.R. §§ 351.205(a), 351.210(a). This order imposes a duty in an amount equal to the amount by which the normal value exceeds the export price (or the constructed export price).

Respondents[1] and petitioners may request an annual administrative review of entries in which Commerce again determines the United States price and normal value for respondents subject to the review. This enables respondents and

---

[1] Commerce refers to foreign producers or exporters as "respondents." *See, e.g.,* 19 C.F.R. § 351.204(d); 19 C.F.R. § 351.213.

petitioners to have the dumping margins and assessment rates updated to reflect the trading activity during the review period.  19 U.S.C. § 1675.

To conduct a dumping analysis, Commerce must obtain from respondents the information necessary to determine the United States prices and the normal value information; here, home market prices.  Commerce does this by issuing an extensive initial questionnaire and supplemental questionnaires, as necessary.

Another important aspect of data collection involves the schedule of the administrative proceeding; here, an administrative review.  The statute establishes deadlines for Commerce to issue preliminary and final results of review. 19 U.S.C. § 1675(a)(3).  To timely issue those results, Commerce sets deadlines for submitting factual information and comments.  These deadlines ensure that all interested parties to the proceeding have a chance to comment and submit rebuttal information, allowing Commerce to analyze the data and comments, and meet its statutory deadlines.  19 C.F.R. § 351.301.

## B. <u>Legal Framework For Application Of Adverse Facts Available</u>

Pursuant to 19 U.S.C. § 1677e, Commerce must follow a two-step process to apply facts available with an adverse inference.  First, Commerce uses facts otherwise available to fill gaps in the record if (A) necessary information is not

available on the record, or (B) an interested party[2] withholds information

requested by Commerce, fails to provide such information in the form and manner

requested, significantly impedes the proceeding, or provides information that

cannot be verified.  19 U.S.C. § 1677e(a).

Second, after deciding to rely on facts otherwise available, Commerce may

apply an adverse inference in selecting from among the facts available if an

interested party fails to cooperate to the best of its ability.  19 U.S.C. § 1677e(b).

An interested party fails to cooperate to "the best of its ability" when it fails to

"put forth its maximum effort to provide Commerce with full and complete

answers to all inquiries in an investigation."  *See Nippon Steel Corp. v. United*

*States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  "While the standard does not require

perfection and recognizes that mistakes sometimes occur, it does not condone

inattentiveness, carelessness, or inadequate record keeping."  *Id.*  Notably, while

the "best of its ability" standard does not require perfection, it does require a

respondent's "familiarity with all of the records it maintains," and that respondents

"conduct prompt, careful, and comprehensive investigations of all relevant records

that refer or relate to the imports in question."  *Id.*  Commerce may apply an

---

[2] Foreign producers and exporters of subject merchandise, domestic manufacturers, and certain other entities, are called "interested parties."  *See* 19 U.S.C. § 1677(9).

adverse inference for a respondent's "failure to cooperate to the best of respondent's ability, regardless of motivation or intent." *Nippon Steel Corp.*, 337 F.3d at 1383. Pursuant to this standard, it is irrelevant whether the respondent was intentionally evasive or whether the respondent thought it had a valid legal basis for withholding the requested information. *See Nan Ya Plastics Corp. Ltd. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir. 2016) ("Congress decided what requirements Commerce must fulfill in reaching its determinations, § 1677e(b), and we do not impose conditions not present in or suggested by the statute's text.").

The Statement of Administrative Action (SAA) accompanying the Uruguay Round Agreements Act explains that the purpose of the adverse facts available provision is "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."[3] SAA, H.R. Doc. No. 103-316, at 870 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4199. When applying an adverse inference, Commerce also considers the extent to which a party may benefit from its own lack of cooperation. *See Nippon Steel*, 337 F.3d at 1382-83.

---

[3] "{The SAA} is an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and {the Tariff Act of 1930, as amended,} in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

Before Commerce may apply adverse facts available due to deficient or incomplete information, the antidumping statute provides that Commerce "shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency{.}" 19 U.S.C. § 1677m(d). Commerce is not obligated to provide more than one opportunity to cure deficient submissions. *See, e.g.*, *Mukand, Ltd. v. United States*, 767 F.3d 1300, 1307 (Fed. Cir. 2014) (adverse inference warranted when foreign producer "evaded providing a direct response to Commerce's specific questions" in supplemental questionnaire); *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1361 (Fed. Cir. 2017) (adverse inference permitted when foreign producer "failed to provide the information requested in Commerce's original questionnaire, and the supplemental questionnaire notified {the foreign producer} of that defect. {Section} 1677m(d) does not require more.").

The antidumping statute also provides that Commerce "shall not decline to consider" incomplete information submitted by an interested party if the following criteria are met:

> (1) the information is submitted by the deadline established for its submission;
> (2) the information can be verified;
> (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination;

(4) the interested party has demonstrated that it has acted to the best of its ability in providing the information and meeting the requirements established by {Commerce} with respect to the information; and
(5) the information can be used without undue difficulties.

19 U.S.C. § 1677m(e).  Failure to meet any one of these criteria means that Commerce is not required to "consider" the information.  *Id.*

When applying an adverse inference, Commerce may rely on information derived from the petition, a final determination in the investigation, any previous review, or any other information placed on the record.  *See* 19 U.S.C. § 1677e(b); *see also* 19 C.F.R. § 351.308(c)(1)(i)-(iii).  Commerce has wide discretion to assign the highest calculated rate to uncooperative parties.  *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1339 (Fed. Cir. 2002).

## III.    Statement Of Facts And Course Of Proceedings Below

### A.    Administrative Proceedings Before Commerce

On July 10, 2020, Commerce initiated the first review of the antidumping duty order on LDWP from Greece, covering a period of review (POR) from April 19, 2019, through April 30, 2020.  Appx00027-00039.  Corinth was the sole company for which a review was requested.

Shortly after initiation, Commerce issued an antidumping duty questionnaire to Corinth, asking it to report per-unit cost of production (COP) and constructed value (CV) based on the company's costs as reported in its accounting system.

Appx00044-00210.  Commerce also instructed Corinth to reconcile its reported

costs to the actual costs reported in Corinth's normal accounting system and to the

accounting records used to prepare its financial statements.  *Id*.  Successful cost

reconciliations assure Commerce that all costs are accounted for and serves as the

starting point for verifying the accuracy of a respondent's reported costs.  In the

initial questionnaire, Commerce provided a sample reconciliation for Corinth to

follow.  *Id.*  However, in its questionnaire response, Corinth failed to submit one

complete cost reconciliation and instead submitted two reconciliations for two

separate periods during the POR–2019 and 2020—including three months

preceding the POR in 2019.  Appx00211-03484;Appx09004.  Corinth's

reconciliations also did not reconcile the expenses in Corinth's income statement to

its cost database, relied on amounts that included production costs at both the

semifinished and finished product stages thereby resulting in double counted costs,

and did not show the total extended POR cost of manufacture (COM) from the

COP database.   Appx09004.

In its first supplemental questionnaire, Commerce noted these deficiencies,

accompanied by the same template issued in the initial questionnaire, and included

instructions to reconcile the cost of goods sold in 2019 to the POR COM, *i.e.*,

removing the COM for the first three months of 2019 and adding the COM for the

first four months of 2020, and to explain Corinth's cost reconciliation line items.

9

Appx03929-03938; Appx09004-09005.  However, Corinth's first supplemental
response again split the cost reconciliation into two parts and failed to remove the
three extraneous months of 2019 and was also missing other reconciling items.
*See* Appx05973-05976; Appx09005.

In its second supplemental questionnaire, Commerce informed Corinth that
its "extensive calculations worksheets and reconciliation are difficult to interpret
because of the lack of adequate descriptions as to the methodology used in the
normal records or in your reporting to Commerce."  Appx06493-06497;
Appx09005.  Commerce instructed Corinth to explain "why it was necessary to
include the cost for the first {three} months of 2019 in your reported costs and to
reconcile your reported costs to Corinth's books and records."  *Id*.  Commerce
again requested explanations for Corinth's steps and lines of data.  *Id.*   In its
second supplemental response, Corinth responded that its "SAP system can
generate costing reports for a particular month or for a range of months in the same
year…{B}ut is not able to generate a cost report for a period that spans two years"
and it "is not able to create a '{period of review} cost report' by combining the
results…for April-December 2019 and another report for January-April 2020."
Appx06997; Appx09005.  Corinth also submitted an annotated version of its cost
reconciliation ostensibly as a road map for the provided worksheets and data.

In the *Preliminary Results*, Commerce calculated a zero percent estimated weighted-average dumping margin. Appx08527-08528. The petitioner submitted a case brief, however, arguing that Commerce should apply facts available with an adverse inference for Corinth's failure to provide an adequate cost reconciliation and cost buildups. Appx08546-08554. In its rebuttal brief, Corinth contended that all of the required cost reconciliation data was available and that is cost information was complete and reliable. Appx08566-08571.

After considering these arguments, and reevaluating Corinth's questionnaire responses in their entirety, Commerce attempted "to piece together a meaningful reconciliation" itself "{u}sing the voluminous worksheets, datafiles, and report downloads submitted by Corinth." Appx09006; Appx09015-09022. In its *Final Results*, Commerce identified four flaws in Corinth's cost responses: (1) that Corinth "failed to provide a proper cutoff of accounting periods and one complete {period of review} cost reconciliation worksheet"; (2) that, even after the removal of amounts designated for exclusion, the total TOTCOM (total cost of manufacturing) costs "still include{d} 'double counted' costs in the COP/CV file reported by {Corinth} per their SAP {cost accounting} system"; (3) that, once the double counted costs were removed, "the amounts contained in the COP/CV file include costs and quantities that are not in accordance with {Corinth's} GAAP compliant audited financial statements"; and (4) that "significant differences in

11

materials and conversion costs" existed between the audited financial statements

and the SAP system report. Appx09016-09018. Commerce ultimately found that

Corinth's cost data was unusable because Corinth failed to provide a proper

reconciliation per the audited income statement. Appx09002. Therefore,

Commerce found that it was necessary to rely on facts available pursuant to 19

U.S.C. § 1677e(a) because Corinth failed to provide a complete reconciliation,

leaving Commerce without the ability to determine whether all costs were properly

included or excluded, and for impeding Commerce's ability to calculate a reliable

margin. Appx08995-08996.

Further, Commerce determined that Corinth failed to cooperate to the best of

its ability by not submitting a complete cost reconciliation and not providing full

and complete answers to Commerce's inquiries and thus applied an adverse

inference in selecting from among the facts otherwise available pursuant to 19

U.S.C. § 1677e(b). Appx08997-08999. Corinth had multiple chances to answer

Commerce's questionnaires but did not do so, instead refusing to provide the

reconciliation in the requested format and leaving a large unreconciled difference

between Corinth's audited financial statement cost of manufacture and its reported

costs. Appx08998-08999. Given the nature of the deficiency, Commerce

disregarded all of Corinth's reported data and applied "total" facts available with

an adverse inference because a failure to properly reconcile submitted costs

12

undermines the entire cost response and thus the entire dumping margin calculation.  Appx08997.  Therefore, relying on facts available with an adverse inference, Commerce assigned Corinth the highest dumping margin alleged in the petition, 41.04%.

### B.    Proceedings Before The Trial Court

Corinth timely sought judicial review before the Court of International Trade, and, on April 28, 2023, the trial court issued an opinion and final judgment sustaining Commerce's final results.  Appx00001-00013.

As a threshold matter, the trial court rejected Corinth's argument that Commerce failed to comply with the requirements of 19 U.S.C. § 1677m(g) by not providing additional opportunities for Corinth to comment on Commerce's interpretation of Corinth's data after issuing the Preliminary Results.  Appx00006-00008.  The trial court found that Commerce was not required under 19 U.S.C. § 1677m(g) to provide Corinth an opportunity to comment on Commerce's interpretation of its reconciliation data.  Specifically, the trial court found that Corinth misunderstood the requirements of § 1677m(g) as the provision's "mandate is confined to *information obtained by Commerce* on which the parties have not yet had an opportunity to comment."  Appx00007 (emphasis in original).  Because Corinth's information was already on the record, the trial court held that

Commerce's interpretation of the information and its resulting determinations were

not subject to 19 U.S.C. § 1677m(g).

The trial court also held that Commerce's application of facts available with

an adverse inference was reasonable.  First, the trial court sustained Commerce's

use of facts available.  The trial court noted that Corinth had conceded that it did

not submit its cost reconciliation in the form and manner Commerce requested and

that Corinth had never notified Commerce that it would not be able to submit its

cost information in the correct format.  Appx00009.  The trial court also rejected

Corinth's efforts to fault Commerce for failing to understand its nonconforming

submissions, noting that Corinth, not Commerce, bore the burden of creating an

adequate record and the burden of showing that Commerce acted unreasonably in

rejecting its cost data.  Appx00010.  As the trial court explained, "that [Corinth]

may have identified another possible reasonable choice for the form and manner of

its submissions falls short of the mark, especially where, as here, [Corinth's]

preferred means of reconciliation is confusing and requires Commerce to sift

through unrequested and irrelevant information."  *Id.* (internal quotations omitted).

Thus, "based on [Commerce's] description of its own attempts to reconcile

Corinth's information, and its explanation as to why a cost reconciliation was a

necessary component underpinning its [less than fair value] analysis as a whole,"

the trial court concluded that Commerce reasonably relied on facts available when determining Corinth's dumping margin.  *Id.*

Second, the trial court also disagreed that Commerce's use of adverse inferences was unreasonable given the crucial nature of Corinth's missing and incomplete information and Corinth's uncooperative behavior.  Appx00011.

Finally, the trial court sustained Commerce's choice for Corinth's rate.  The trial court noted that Commerce is empowered to rely on various sources of information for adverse inferences, including the petition, so long as it corroborates the information from independent sources that are reasonably at its disposal.  Appx00012 (citing 19 U.S.C. § 1677e(b)(2) and 19 C.F.R. § 351.308(d)).

This appeal followed.

## SUMMARY OF THE ARGUMENT

Commerce's determination to apply facts available with an adverse inference is supported by substantial evidence and in accordance with law.  Commerce was under no obligation to provide Corinth an opportunity to comment on its findings regarding its cost reconciliation under 19 U.S.C. § 1677m(g) because Commerce did not place new information on the record when analyzing Corinth's cost data.  Corinth's arguments to the contrary lack merit.  Commerce's determination to apply facts available with an adverse inference also should be sustained because Corinth impeded the review by submitting an incomplete reconciliation not in the

form and manner Commerce requested and did not act to the best of its ability in complying with Commerce's information requests.

Corinth argues that Commerce failed to support its findings under 19 U.S.C. § 1677e(a) because Corinth did not withhold information, impede the proceeding, or fail to provide information in the form and manner requested by Commerce. However, as the trial court correctly held, Corinth's arguments are misplaced because they "focus on Commerce's alleged inability to understand and replicate Corinth's calculations" rather than on whether Corinth failed to provide information in the form and manner requested by Commerce. At bottom, Corinth never provided the information Commerce requested; instead, it argues that with considerable additional explanation, it is possible for it to reconcile its data now.

Additionally, Commerce's determination to apply an adverse inference in selecting from among the facts available and use total "adverse facts available" is supported by substantial evidence. Corinth had multiple opportunities, via the initial and supplemental questionnaires, to submit a proper reconciliation but refused to do so. Commerce fully explained the crucial nature of the missing and incomplete information and instances of Corinth's uncooperative behavior. Moreover, Commerce appropriately declined to use any of Corinth's reported data because, without a usable cost reconciliation, the remaining information was too incomplete to serve as a reliable basis for reaching a dumping determination.

16

Lastly, Corinth argues that it submitted its cost reconciliation in the form and manner requested by Commerce and that Commerce failed to give Corinth proper notice of its cost deficiencies as required by 19 U.S.C. 1677m(d). However, Corinth failed to exhaust these arguments before Commerce and also waived the arguments by failing to raise them before the trial court. Therefore, the Court should not consider these arguments which, in any event, lack merit.

## ARGUMENT

### I.   Standard Of Review

This Court reviews decisions of the Court of International Trade *de novo*, "apply{ing} anew the same standard used by the {CIT}." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015). Under that standard, this Court upholds Commerce's determination unless it is unsupported by substantial record evidence, or otherwise unlawful. *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).

Substantial evidence connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may also be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). A party

17

disputing Commerce's determination as unsupported by substantial evidence thus

"has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United

States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted), and the Court will

sustain Commerce's determinations if they are reasonable and supported by the

record as a whole, even if some evidence detracts from them. *Atl. Sugar, Ltd. v.

United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

The possibility of drawing two inconsistent conclusions from the evidence in

the record does not preclude Commerce's determination from being supported by

substantial evidence. *Consolo*, 383 U.S. at 620. Moreover, Commerce is accorded

particular deference in antidumping and countervailing duty determinations. *See*,

*e.g.*, *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996)

("Antidumping and countervailing duty determinations involve complex economic

and accounting decisions of technical nature, for which agencies possess far

greater expertise than courts.").

## II.     Commerce's Decision To Apply Facts Available With An Adverse Inference Was Supported By Substantial Evidence And Consistent With Law, Including With 19 U.S.C. § 1677m(g)

Corinth contends that Commerce violated 19 U.S.C. §1677m(g) by failing to

provide an opportunity for parties to comment on Commerce's analysis of

Corinth's reconciliation methodology. Corinth Br. at 16-32. But Corinth

misconstrues the requirements of 19 U.S.C. § 1677m(g), which requires that

18

parties be given the opportunity to comment on new information, not Commerce's reinterpretation or analysis of information already on the record.

The statute requires that Commerce, during an administrative review but before making a final determination, "shall cease collecting information and shall provide parties with a final opportunity to comment on the information obtained by the administering authority…upon which the parties have not previously has an opportunity to comment." *See* U.S.C. §1677m(g). When Commerce uses that record information in its calculations, it does not produce new information within the meaning of 19 U.S.C. § 1677m(g). The Court of International Trade has previously noted that "the statute requires Commerce to provide an opportunity to comment only on information it collects or obtains externally, not findings that it makes or generates internally" and that "Commerce's interpretation of factual information does not lead to the conclusion that its final determination is subject to comment." *Tri-Union Frozen Prods., Inc. v. United States*, 163 F. Supp. 3d 1255, 1289 (Ct. Int'l Trade 2016)). Thus, Commerce is only required to provide parties an opportunity to comment on new information.

Here, Commerce's analysis of Corinth's reconciliation in the underlying proceeding did not generate any new information, but rather used what was available from Corinth's confusing and unclear reconciliation submissions. Appx09000-09007; Appx 09015-09018. Accordingly, the trial court appropriately

19

held that 19 U.S.C. § 1677m(g) did not require Commerce to provide Corinth an opportunity to comment on its reconciliation results.

Corinth argues, erroneously, that the trial court misinterpreted 19 U.S.C. § 1677m(g). First, Corinth argues that Commerce's "methodological change to reconstruct" Corinth's reconciliation in a manner that double deducted semi-finished pipe costs constitutes information placed on the record by Commerce. Corinth Br. at 18-26. However, Commerce reconstructed Corinth's reconciliation using information already on the record – which parties had already had an opportunity to comment on—and as such, Commerce complied with 19 U.S.C. § 1677m(g). Corinth Br. at 18-26. Indeed, Corinth does not cite any precedent establishing that analysis of or attempts to reconstruct confusing or incomplete reconciliations submitted by interested parties constitutes new information within the meaning of 19 U.S.C. § 1677m(g). And under Corinth's view, each time Commerce analyzes the record and issues a final determination, it would need to provide another opportunity for parties to comment, potentially resulting in a never-ending cycle of analysis and comment.

Corinth is also incorrect that Commerce was required by the "applicable standard of review" to "provide {Corinth} with an opportunity to comment on Commerce's finding that CPW's costs did not reconcile." Corinth Br. at 27. The standard of review requires only that Commerce support its determination with

20

substantial evidence and act in accordance with law – which it has done. *See* 19

U.S.C. § 1516a(b)(1)(B(i).  Commerce is under no affirmative obligation to

preview all the ways it might change its determination between a preliminary and

final determination in a review, and indeed the cases that Corinth cites in support

of its contrary claim are inapplicable.

 Corinth relies on *Koyo Seiko Co., Ltd. v. United* States, 516 F. Supp. 3d 1323

(Ct' Int'l Trade 2007) to argue that Commerce must permit parties an opportunity

to comment on "changes in methodology."  But Commerce's final determination

was not a "change in methodology" because Commerce never actually made any

changes to the information that it requested from Corinth, and in fact asked Corinth

repeatedly to provide its reconciliation in the proper format.  But even if there had

been a "change in methodology," the ruling in *Koyo Seiko* was premised on the

proposition that "principles of fairness prevent Commerce from changing its

methodology without proper notice."  *Koyo* Seiko, 516 F. Supp. 3d at 1333 (citing

*Shikoku Chems. Corp. v. United States*, 795 F.Supp. 417 (1992)).  In *Koyo Seiko*,

the court analyzed changes in methodology where plaintiffs convincingly argued

that they had detrimentally relied on Commerce's old methods when conducting

pricing and cost activities.  *Koyo Seiko*, 795 F. Supp. at 1332; *see also SKF USA*

*Inc. v. United States*, 537 F.3d 1373, 1381 (Fed. Cir. 2008) (discussing *Koyo Seiko*

and *Shikoku Chems. Corp.* and finding no violation of 19 U.S.C. § 1677m(g)

where the plaintiff failed to "establish detrimental reliance on the old methodology."). Accordingly, even if Commerce did change its analysis of Corinth's reconciliation between the preliminary and final results, Corinth's contention is unavailing because it did not argue detrimental reliance of the type demonstrated in *Koyo Seiko* or point to any record evidence before the trial court indicating detrimental reliance. Appx00007.

Corinth also continues to ignore that "each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." *Jiaxing Brother Fastener Co. v. United States*, 822 F. 3d 1289, 1299 (Fed. Cir. 2016). Commerce was free to generate its calculations and conduct its reconciliation analysis based on the record information before it in the review. *Id.*

The other cases that Corinth relies upon to support its argument that Commerce "failed to meet the requirements of 19 U.S.C. § 1677m(g) are also distinguishable. In *Home Prods. Int'l. Inc. v. United States*, 556 F. Supp. 2d 1338 (Ct. Int'l Trade 2008), Commerce sought a voluntary remand because parties had no opportunity to comment on *new* benchmark *information* that was placed on the record. As explained above, the present case does not concern *new* information on the record but Commerce's interpretation and analysis of Corinth's reconciliation data that was *already* on the record.

22

In *CC Metals & Alloys, LLC v. United States*, the trial court remanded because there was "merit" in plaintiffs' contention that Commerce's calculations in the final determination were inconsistent with a policy bulletin and based on post-hoc rationalizations.  145 F. Supp. 3d 1299, 1308-11 (Ct. Int'l Trade 2016). Corinth, on the other hand, has not alluded to any inconsistencies with preexisting policy or post-hoc rationalizations in this case, and Commerce sent the same reconciliation worksheet that it sends in all questionnaires.

Unlike *Nan Ya Plastics*, where the plaintiff was not provided an opportunity to challenge Commerce's determination that an adverse rate was not aberrational, Corinth was provided notice of deficiencies in its reconciliation data through multiple questionnaires and Corinth was also on notice that Commerce may rely on adverse facts available in its final results because the petitioner raised that very issue in its case brief.  *See* Corinth Br. at 28-32 (discussing *Nan Ya Plastics Corp. v. United States* 906 F. Supp. 2d 1348 (Ct. Int'l Trade 2013)).  Indeed, Corinth argued in administrative briefing that its data was complete such that reliance on facts available was inappropriate.  *See* Appx08565-08579.

In *Carpenter Technology*, Commerce changed its methodology between the preliminary and final determination in a way that precluded party comment.  *See* Corinth Br. at 28-32 (discussing *Carpenter Tech. Corp. v. United States*, 477 F. Supp. 3d 1356 (Ct. Int'l Trade 2020)).  But in that case, in determining a

respondent's margin based on facts available with an adverse inference, Commerce chose to "calculate a 'surrogate' {cost of production}" rather than the "highest (non-aberrational) transaction-specific margin." *Id.* at 1362. In briefing before the court, the United States identified "potential concerns" with its new methodology that parties had not previously had an opportunity to comment on. In contrast, Corinth does not argue that Commerce's calculation of an adverse facts available rate contained errors that could not have been known prior to the final results. Rather, Corinth argues that its cost data is reliable – an argument that Corinth was able to brief fully before Commerce.

The remainder of Corinth's references cited in footnote 8 are equally unavailing. *Government of Argentina v. United States*, 542 F. Supp. 3d 1380 (Ct. Int'l Trade 2022) concerns a situation where *new* factual information, specifically biodiesel prices and tax regime changes, was placed onto the record. *Gov't of Argentina*, 542 F. Supp. 3d at 1387-88. Lastly, *JBF RAK LLC v. United States*, 991 F. Supp. 2d 1343 (Ct. Int'l Trade 2014) stands for the proposition that Commerce may lawfully issue a post-preliminary decision *at its discretion*, but there is no affirmative obligation on Commerce to do so. *See JBF RAK*, 991 F. Supp. 2d at 1352-3 (supporting Commerce's decision to issue a post-preliminary decision and that its choice to do so was not limited).

In short, Commerce was not required under 19 U.S.C. §1677m(g) or any other provision of law to provide Corinth notice and opportunity to comment after concluding that Corinth failed to reconcile its costs to its books and records.

## III. Commerce Properly Applied Facts Available With An Adverse Inference To Corinth

Corinth challenges Commerce's decision to apply facts available with an adverse inference because Corinth claims that its reconciliation submissions do, in fact, reconcile. Corinth Br. at 32-40. As discussed below, however, despite multiple opportunities for correction, Corinth's cost reconciliation submissions were inadequate, and Commerce's decision to apply an adverse inference is supported by substantial evidence. Appx09015-09018; Appx00008-00012.

### A. Corinth Repeatedly Failed To Provide Requested Information Detailing Its Cost Of Production

Under 19 U.S.C. § 1677b(f)(1)(A), Commerce shall normally calculate costs based on the records of the exporter or producer of the merchandise, if the records are kept in accordance with the generally accepted accounting principles of the exporting country and reasonably reflect the costs associated with the production and sale of the merchandise. The cost reconciliation assures Commerce that the respondent has "accounted for all costs before allocating those costs to individual products and thus serves as the starting point for verifying the accuracy of a

respondent's reported costs." *Myland Indus., Ltd. v. United States*, 31 C.I.T. 1696, 1703 (Ct. Int'l Trade 2007) (internal quotations omitted).

As detailed above, Commerce provided Corinth with three opportunities to submit its cost reconciliation information in the form and manner requested, but Corinth failed to do so and repeatedly reported flawed and unusable data that could not be verified. Appx09000-09007; Appx00163; Appx03934. Rather than follow Commerce's template, Corinth instead submitted two separate reconciliations covering two segments of the period of review—one for 2019 and one for 2020. Appx09004. For 2019, Corinth's reconciliation included the first three months of the year—which was outside the period of review. *Id*. Moreover, the reconciliation Corinth provided did not reconcile the expenses in its audited income statement to its extended cost database, and it apparently relied on amounts that included the counting of product costs at both the semifinished and finished product stage, resulting in double counted costs and inflating the figures. *Id*. Corinth also submitted "voluminous" numbers of worksheets without accompanying explanations, frustrating Commerce's attempts to understand Corinth's reporting and accounting methodology. Appx09005; Appx06496.

Commerce informed Corinth that its "extensive calculations worksheets and reconciliation" were difficult to interpret because they lacked "adequate descriptions as to the methodology used in the normal records or in your reporting

to Commerce," and it provided opportunities for Corinth to better explain how it had extracted data from its normal books and records. Appx06495-06496; Appx09005; Appx06997. But Corinth never provided its reconciliation in the format Commerce requested, and it was never able to explain the information that it did submit in a way that made sense to Commerce.

As Commerce explained in its final decision memorandum, to reconcile its 2019 audited financial statement cost of manufacture to the costs reported in its SAP cost report for 2019, Corinth added the cost of double counted raw materials and semi-finished products; the SAP cost report contained a significant amount of costs that were excluded for financial statement reporting purposes. Appx09006; Appx05973. Corinth's submitted costs were based on its SAP cost report, and neither a sorting of the SAP cost report or extensive pivot tables address how the double counted costs were identified and removed. *Id.* While a sort of its SAP cost report by merchandise under consideration tied to the reported costs, to do so, Corinth included both finished and semifinished products, yet the incomplete reconciliation does not show how semifinished product costs were excluded nor could this be determined from Corinth's response. *Id.* Corinth's incomplete reconciliation "simply {did} not separately show the {generally accepted accounting principles} compliant actual cost of {merchandise not under consideration} and {merchandise sold to third countries}, which should be

27

reconciling items, and there is no way to determine Corinth's actual costs from a sort of Corinth's SAP download." *Id.* (citing Corinth's Section D Supplemental Questionnaire Response at Exhibits 9-10, Appx05973-05976).

With respect to the extraneous months included in 2019, Corinth acknowledged that its SAP system had a viable way to remove the first three months of costs in 2019 falling outside of the period of review, exactly as it had done for the 2020 reconciliation. Appx09005 (citing Corinth's Section D Supplemental Questionnaire Response at Exhibit-13)*. Although it could not submit a single report spanning the full period of review, Corinth could have reconciled its period of review costs by removing the extraneous months from 2019 and reconciling the remaining cost of manufacture to its trial balance for the remaining months of 2019 and to its SAP cost report. *Id.*

With respect to Corinth's reported costs, Corinth effectively added the cost of consumption to the cost of manufacture—*i.e.*, the double counted costs—and identified only the costs of non-subject merchandise and the associated double counted costs *without* identifying the specific three reconciling values for cost of manufacture of merchandise under consideration, merchandise not under consideration, merchandise sold to third countries, and the separate cost of consumption. Appx09006; Appx09016-09017. Corinth's alternative did not break out these components as Commerce had requested, and Corinth did not identify the

costs of non-subject merchandise or merchandise sold in third countries. Although Commerce endeavored to sift through the extensive data and worksheets that Corinth provided, Appx09003, it was ultimately unable to discern these necessary reconciling items. Appx09017.

Based on extensive deficiencies in Corinth's cost reconciliation, Commerce reasonably found that Corinth failed to submit a satisfactory and complete reconciliation in the form and manner requested. As such, Commerce appropriately relied on the facts otherwise available in making its determination pursuant to 19 U.S.C. § 1677e(a). Likewise, Commerce reasonably found that Corinth also did not act to the best of its ability by not submitting a complete cost reconciliation and not providing full and complete answers to Commerce's inquiries, thus warranting an application of an adverse inference pursuant to 19 U.S.C. § 1677e(b). Appx09002-09007. As demonstrated above, Corinth had multiple opportunities to answer Commerce's questionnaires and provide a usable reconciliation yet failed to do so. While Corinth provided a data dump, which Commerce had to sift through, this does not mean the data was responsive to Commerce's specific requests. Appx09016. Commerce's decision is supported by substantial evidence and should be sustained.

**B.    Corinth Fails To Identify Any Error in Commerce's Determination To Resort To Facts Available**

Corinth argues that Commerce could not lawfully resort to facts available pursuant to 19 U.S.C. § 1677e(a).  Corinth Br. at 32-55.  According to Corinth, Commerce simply misunderstood its cost reconciliation and, in fact, its costs reconcile.  However, Corinth's belated attempts to explain its reconciliation merely underscore the deficiencies that Commerce identified in the underlying proceeding. Ultimately, because Corinth impeded the proceeding by failing to submit reconciliation information to Commerce in the form and manner requested, Commerce more than satisfied the statutory standard for relying on facts available.

Corinth dedicates a significant portion of its brief to the irrelevant assertion that its costs do in fact reconcile and that Commerce made a factual error in attempting to piece together Corinth's voluminous and confusing submissions.  *See* Corinth Br. at 34-40.  However, as the trial court correctly held, these arguments are misplaced because the "burden of creating of an adequate record lies with interested parties and not with Commerce." Appx00010 (citing *Nan Ya*, 810 F.3d at 1337-38).  More importantly, the issue is not whether, with a better understanding of Corinth's internal accounting systems, Commerce could have potentially reconciled Corinth's cost data.  Rather, the issue is whether Commerce acted reasonably in rejecting Corinth's cost data.  *Union Steel*, 713 F.3d at 1106; 19 U.S.C. § 1516a(b)(1)(B)(i).

30

That Corinth devotes pages of its brief to explaining why its reported costs reconcile merely underscores that Corinth's submissions before Commerce were inadequate and that Commerce was justified in finding that Corinth impeded the proceeding by failing to submit the cost reconciliation in the requested form and manner. *See Nippon Steel Corp.*, 337 F.3d at 1381 ("The mere failure of a respondent to furnish requested information—for any reason—requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination."). Corinth had multiple opportunities before Commerce to provide the requested reconciliation. It failed to do so.

Corinth also argues that its reconciliation was complete and accurate despite including months outside of the relevant period of review. According to Corinth, none of the products reported in its antidumping response were produced during the three months of 2019 that fell outside of the period of review. *See* Corinth Br. at 45. However, this argument is similarly unavailing because it disregards that Commerce explicitly asked in its questionnaires that Corinth provide the period of review cost of manufacture. Appx00163; Appx03934; Appx06988. Indeed, the trial court correctly observed that Corinth's own arguments betrayed an awareness of the fact that the reconciliation Corinth submitted was not presented in the form and manner requested. *See* Appx00010 (citing Appx09129 (admitting that Corinth "provided an alternate to Commerce's preferred reconciliation structure")).

31

Moreover, Corinth chose not to remove the extraneous months of 2019, not

because it was unable to do so, but because it alleges that it did not produce

merchandise under consideration during that time.  Pl Br. at 45; *see also*

Appx09140-09147.  But there are no criteria that permit respondents to include

out-of-review months of the period of review simply because there was no

production of subject merchandise.

In sum, as the trial court correctly determined, Appx00010, Corinth has not

identified any error in Commerce's decision to resort to facts available.  While

Corinth may disagree with Commerce's interpretation of the voluminous and

confusing data on the record, at best, Corinth provides an alternative to

Commerce's interpretation of the submitted data.  "[W]here two different,

inconsistent conclusions may reasonably be drawn from the evidence in record, an

agency's decision to favor one conclusion over the other is the epitome of a

decision that must be sustained upon review."  *See Pokarna Engineered Stone Ltd.*

*v. United States*, 56 F.4th 1345, 1349 (Fed. Cir. 2023) (quoting *In re Jolley*, 308

F.3d 1317, 1329 (Fed. Cir. 2002), *see also Fujitsu Gen.*, 88 F.3d at 1039

("Antidumping and countervailing duty determinations involve complex economic

and accounting decisions of technical nature, for which agencies possess far

greater expertise than courts.").

Commerce's determination is further supported by this Court's precedent.  In

*Hyundai Electric & Energy Systems*, a case with similar facts, this Court sustained

Commerce's use of facts available with an adverse inference when respondents

failed to follow Commerce's reconciliation instructions.  *See Hyundai Elec. &*

*Energy Sys. Co. v. United States,* 466 F. Supp. 3d 1303 (Ct. Int'l Trade 2020) (*aff'd*

*Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078 (Fed. Cir. 2021)).

In *Hyundai*, the plaintiff provided worksheets and cost-reconciliation information

"not formatted in accordance with the worksheet Commerce provided."  466 F.

Supp. 3d at 1315-1316.  Commerce issued supplemental questionnaires with

specific instructions, yet Hyundai provided another inadequate response.  *Id*. at

1316.  For its final results, "Commerce determined that Hyundai did not provide

requested cost reconciliation data despite being required {to do so} two different

times."  *Id*. (internal quotations and citation omitted).  The Court sustained

Commerce's determination to disregard all of Hyundai's data and use total facts

available because "Commerce is not obligated to consider information that is so

incomplete that it cannot serve as a reliable basis for reaching the applicable

determination."  *Id*. at 1318 (internal quotation and citation omitted); *see also*

*Hyundai Elec.*, 15 F.4th at 1089.  This Court also sustained Commerce's

application of an adverse inference because it found that Hyundai, on two

occasions, including when it submitted two questionnaire responses with the same

deficiency, did not act to the best of its ability. *Hyundai Elec. & Energy Sys. Co. v. United* States, 15 F.4th 1078 (Fed. Cir. 2021).

Similarly, in *Pro-Team Coil Nail Enterprise, Inc. v. United States*, 483 F. Supp. 3d 1242 (Ct. Int'l Trade 2020), the Court of International Trade sustained Commerce's application of total adverse facts available, after an initial remand for further explanation, to respondent Unicatch after it failed to submit a complete cost reconciliation in the form and manner requested despite multiple opportunities to do so. 483 F.Supp.3d at 1246. Specifically, Commerce had requested three times that Unicatch "revise its cost reconciliation to reconcile the sales from {its} audited financial statements to the extended total cost of manufacturing in {its} submitted cost database." *Id*. (internal quotations and citation removed). However, Unicatch continued to submit reconciliations that "failed to directly link to the antidumping cost database." *Id*. at 1247. Moreover, Commerce "confronted significant discrepancies when it attempted to complete the reconciliation." *Id*. Unicatch, like Corinth, also attempted to "explain how Commerce could use record information to complete the reconciliation." *Id.* Commerce rejected Unicatch's explanations because such "alternative adjustment{s} {} only leads to more questions regarding the completeness of the reconciliation, the reconciling items, and whether all costs were properly included or excluded," and the Court of International Trade sustained Commerce's choice to do so. *Pro-Team Coil Nail Enter. v. United*

34

*States*, 419, F.Supp. 3d 1319, 1336 (Ct. Int'l Trade 2019) (internal quotations and

citation omitted) (*Pro-Team I*).

The facts of this case mirror that of *Hyundai Electric* and *Pro-Team*.

Commerce's determination to use facts available with an adverse inference is

supported by the statute and in accordance with law.

### C.    Commerce Appropriately Relied On Total Adverse Facts Available

Corinth also argues that precedent supports the use of a neutral rather than

adverse inference because the gap in the record was "small" and other information

to fill that gap was available.  Corinth Br. at 55-58.  However, a respondent's

failure to reconcile "applies to [the respondent's] reported cost information *as a

whole*" such that reliance on total adverse facts available is appropriate.  *Hyundai

Elec. & Energy*, 466 F. Supp. 3d at 1318 (emphasis in original).  In addition,

Commerce may apply an adverse inference "regardless of motivation or intent."

*Nippon Steel Corp.*, 337 F.3d at 1383.

Moreover, a failure to submit a useable cost reconciliation is no "small" gap

as Corinth claims.  The cases that Corinth cites in support of its contrary claim are

distinguishable in that neither case concerns inadequate cost reconciliations or gaps

that undermine the entirety of a respondent's cost database.  *See Hyundai Elec. &

Energy Sys. v. United States*, 2022 U.S. App. LEXIS 22235, at *9 (Fed. Cir. 2022)

(discussing that Hyundai's components affected the price of only one home market

sale); *see also Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1347 (Fed. Cir. 2011) (explaining that the missing information for two frontseating service valve sales for the month of December was independently verifiable using already verified data on the record).

Since Corinth's improper reconciliation submissions undermined its reporting as a whole, Commerce reasonably found that it could not rely on other record information provided by Corinth in reaching its final determination.

### D.    Corinth's Remaining Arguments Have Not Been Exhausted, Have Been Waived And, In Any Event, Lack Merit

Corinth argues that Commerce's reliance on facts available pursuant to 19 U.S.C. § 1677e(a) was unlawful because it submitted the reconciliation data in the form and manner requested.  Corinth Case Br. at 40-47.  According to Corinth, it complied with Commerce's instructions by providing reasonable explanations for submitting two reconciliations.  Corinth Case Br. at 41-47.  Specifically, Corinth cites to language in Commerce's questionnaire that "{t}he items and order of the reconciliation will vary by situation" and argues that Commerce "recognized that a respondent's reporting may differ depending on the situation."  *Id.*  Corinth also argues that Commerce "implicitly recognized" Corinth's approach in supplemental questionnaires.  *Id.* at 43.

This is the first time Corinth has raised these arguments, however, and as such they have not been exhausted and also have been waived.  *See generally*

Appx08529-08534; Appx09112-09155.  Corinth neither exhausted its administrative remedies with respect to these claims nor raised them before the trial court.  *See* 28 U.S.C. § 2637(d) ("the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."); *see also Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (deeming argument waived where not presented in opening brief filed with the Court of International Trade).  Under these circumstances, it would be inconsistent with exhaustion and waiver principles for the Court to address an issue where only Corinth has been heard.  *See, e.g., Novosteel*, 284 F.3d at 1274 ("{P}arties must give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply brief"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (exhaustion requirements are designed "to give the agency a fair and full opportunity to adjudicate {parties'} claims").

In any event, Corinth's argument still fails because Corinth did not argue that it was *unable* to submit its cost information in the form and manner requested, but instead opted to dump numerous reports, worksheets, and tables in an apparent attempt to make a complete reconciliation.  Appx08995.  Pursuant to 19 U.S.C. § 1677m(c), a party must notify Commerce if it is unable to submit information in the requested form and manner "together with a full explanation and suggested alternative forms in which such party is able to submit the information."  19 U.S.C.

§ 1677m(c).  Corinth did not do so here and instead elected to unilaterally change the format of the cost reconciliation in a manner that frustrated Commerce's ability to confirm the accuracy of Corinth's reported costs.  Further, Corinth's claim that Commerce "implicitly recognized" its reconciliation format is plainly incorrect. Commerce issued repeated deficiency questionnaires to Corinth in an effort to understand its reconciliation methodology and ultimately could not reconcile Corinth's costs despite extensive efforts to do so.

Corinth also argues that the use of facts available with an adverse inference was not appropriate because Commerce did not sufficiently inform Corinth of the deficiency pursuant to 19 U.S.C. § 1677m(d).  Corinth Br. at 47-55.  Specifically, Corinth contends that it was never informed of the specific reason, *i.e.*, the "erroneous" double deduction of semi-finished pipe costs, underlying the determination that Corinth's costs did not reconcile.  *Id*. at 47-8.  This is the first time Corinth has raised this argument.  At no point before Commerce or the trial court did Corinth assert that Commerce's supplemental questionnaires were not adequately descriptive or otherwise failed to satisfy the statutory criteria.  *See generally* Appx08529-08534;Appx09112-09155.  Indeed, the trial court expressly recognized this fact in its opinion.  *See* Appx00008 at n. 7 (noting that Corinth's arguments "might have been better made under § 1677m(d)").  As with its

argument regarding the adequacy of its reconciliation format, Corinth failed to

exhaust its administrative remedies and waived this argument.

In any event, Corinth is incorrect.  As Corinth acknowledges in its brief,

Commerce provided "detailed" questions concerning the submitted reconciliation.

Corinth Br. at 44.  "{T}he burden of creating an adequate record lies with

interested parties and not with Commerce." *Nan Ya Plastics*, 810 F.3d at 1337-38.

With this standard in mind, "Commerce must still ensure that the respondent is

'fully aware of what information the Department [seeks] and the form in which it

[seeks] the data.'" *Mukand, Ltd. v. United States*, 37 CIT 443, 447 (Ct. Int'l Trade

2013), citing *SKF USA Inc v. United States*, 391 F. Supp. 2d 1327, 1336 (Ct. Int'l

Trade 2005).  Commerce acted in accordance with law by explaining what it

sought through its requests for further clarification and asking Corinth detailed

questions.  While Corinth may have preferred that Commerce's deficiency

questionnaire be more specific, any lack of specificity is of Corinth's own making

because it departed from Commerce's requested reconciliation format and instead

submitted voluminous documentation and a reconciliation lacking necessary

descriptive detail.  Appx09016.  Because Commerce fulfilled its requirements

under the statute, it properly relied on facts available pursuant to 19 U.S.C.

§ 1677e(a).

# CONCLUSION

For these reasons, the Court should affirm the trial court's decision sustaining Commerce's application of total adverse facts available.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
CHRISTOPHER KIMURA
Office of the Chief Counsel for
Trade Enforcement & Compliance
Department of Commerce

ERIC J. SINGLEY
Trial Attorney
U.S. Department of Justice
Civil Division
PO Box 480
Ben Franklin Station
Washington D.C. 20044
Email: eric.j.singley@usdoj.gov

*Attorneys for Defendant-Appellee*

December 13, 2023

*United States*

## CERTIFICATE OF COMPLIANCE

Counsel for respondent certifies that this brief complies with the Court's type-volume limitation rules.  *See* Fed. Cir. R. 32(a).  According to the word-count calculated by the word processing system with which this brief was prepared, the brief contains a total of 8,660 words, which is within the 14,000 word limit.

/s/ Eric J. Singley

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 31st day of October, 2023, a copy of the foregoing "BRIEF OF DEFENDANT-APPELLEE UNITED STATES" was filed electronically and served on all parties by operation of the Court's electronic filing system.


/s/Eric J. Singley
ERIC J. SINGLEY