2023-2094

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CORINTH PIPEWORKS PIPE INDUSTRY S.A., CPW AMERICA CO.,

Plaintiffs-Appellants

v.

UNITED STATES, THE AMERICAN LINE PIPE PRODUCERS
ASSOCIATION TRADE COMMITTEE,

Defendants-Appellees

Appeal from the United States Court of International Trade
in Consol. Case No. 1:22-CV-00063
Judge Leo M. Gordon

## RESPONSE BRIEF OF DEFENDANT-APPELLEE
## THE AMERICAN LINE PIPE PRODUCERS ASSOCIATION
## TRADE COMMITTEE

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Line
Pipe Producers Association
Trade Committee*

Dated: December 13, 2023

**FORM 9. Certificate of Interest**

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-2094 |
| **Short Case Caption** | Corinth Pipeworks Pipe Industry SA v. United States |
| **Filing Party/Entity** | The American Line Pipe Producers Association Trade Committee, Defendant-Appellee |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 07/13/2023

Signature:  /s/ Timothy C. Brightbill

Name:  Timothy C. Brightbill

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| The American Line Pipe Producers Association Trade Committee | | See attachment. |
| whose individual members are detailed on the attached form. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑  Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

---

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable      ☐ Additional pages attached

|  |  |  |
|--|--|--|
|  |  |  |
|  |  |  |
|  |  |  |

---

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☑ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

---

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable      ☐ Additional pages attached

|  |  |  |
|--|--|--|
|  |  |  |
|  |  |  |

**1.  Represented Entities**

The individual members of The American Line Pipe Producers Association Trade Committee are as follows: American Cast Iron Pipe Company; Borusan Berg Pipe; Dura-Bond Industries; Stupp Corporation; Welspun Global Trade LLC; Greens Bayou Pipe Mill, LP; Skyline Steel; and Trinity Products LLC.

**3.  Parent Corporations and Stockholders**

Borusan Berg Pipe is a wholly-owned subsidiary of Borusan Mannesmann.

Skyline Steel is a wholly-owned subsidiary of Nucor Corporation.

Welspun Global Trade LLC is a wholly-owned subsidiary of Welspun Corp. Limited.

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ...........................................................................1

II.  STATEMENT OF RELATED CASES...........................................1

III. STATEMENT OF THE ISSUES ..................................................2

IV.  STATEMENT OF THE CASE ......................................................2

V.   SUMMARY OF ARGUMENT......................................................5

VI.  ARGUMENT...................................................................................6

   A.   Commerce's Decision to Apply Facts Available with an
        Adverse Inference Was Supported by Substantial
        Evidence and Consistent with Law, Including with
        19 U.S.C. § 1677m(g) ...................................................... 8

   B.   Commerce's Decision to Apply Total Adverse Facts
        Available Was Supported by Substantial Evidence and
        Consistent with Law, Including with 19 U.S.C. § 1677e ........................ 16

   C.   Commerce's Determination to Apply Total AFA Was
        Warranted........................................................................... 22

VII. CONCLUSION ............................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Deacero S.A.P.I. de C.V. v. United States*,
   353 F. Supp. 3d 1303 (Ct. Int'l Trade 2018) ......................12

*Essar Steel Ltd. v. United States*,
   678 F.3d 1268 (Fed. Cir. 2012) ...........................................8

*Fresh Garlic Producers Ass'n v. United States*,
   121 F. Supp. 3d 1313 (Ct. Int'l Trade 2015) ......................12

*Koyo Seiko Co. v. United States*,
   516 F. Supp. 3d 1323 (Ct. Int'l Trade 2007) ......................12

*Nan Ya Plastics Corp. v. United States*,
   810 F.3d 1333 (Fed. Cir. 2016) .........................................19

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003) ....................................7, 24

*Peer Bearing Co. v. United States*,
   12 F. Supp. 2d 445 (Ct. Int'l Trade1998) .........................11

*PT Kenertec Power Sys. v. United States*,
   Consol. Ct. No. 20-03687, slip op. 21-175 (Ct. Int'l Trade Dec. 28,
   2021) ....................................................................................12

**Statutes**

19 U.S.C. § 351.308(c)(1)(i) ...................................................7

19 U.S.C. § 351.308(c)(1)(ii) ..................................................7

19 U.S.C. § 351.308(c)(1)(iii) .................................................7

19 U.S.C. § 1677e .................................................................17

19 U.S.C. § 1677e(a) ...............................................................7

19 U.S.C. § 1677e(b) ............................................................6, 7

19 U.S.C. § 1677m(g) ...................................................................9

19 U.S.C. § 1677m(i)(3) .................................................................

**Other Authorities**

Fed. Cir. R. 28(b) .........................................................................2

Uruguay Round Agreements Act, Statement of Administrative Action,
    H.R. Doc. No. 103-316, vol. 1 (1994), *reprinted in* 1994
    U.S.C.C.A.N. 4040 ...................................................................8

## I.    <u>INTRODUCTION</u>

On behalf of Defendant-Appellee the American Line Pipe Producers Association Trade Committee ("ALPPA Trade Committee" or "Defendant-Intervenor"), we respectfully submit the following response to the September 29, 2023 opening brief filed by Plaintiffs-Appellants Corinth Pipeworks Pipe Industry S.A. and CPW America Co. ("Plaintiffs" or "CPW").  Opening Br. of Pls.-Appellants Corinth Pipeworks Pipe Industry S.A. and CPW America Co. (Sept. 29, 2023), ECF No. 16 ("CPW Br.").  For the reasons discussed below and in the brief of Defendant United States, Plaintiffs-Appellants' motion should be denied, and judgment should enter for Defendant United States.

## II.    <u>STATEMENT OF RELATED CASES</u>

Like CPW, the ALPPA Trade Committee is unaware of any appeals in or from the same civil action or proceeding that have previously been before this Court or any other appellate court.  Likewise, the ALPPA Trade Committee is unaware of any action pending in the U.S. Court of International Trade ("CIT") that stands to be directly affected by the outcome of this appeal.

## III.   **STATEMENT OF THE ISSUES**[1]

1.     Whether the Department of Commerce's ("Commerce") determination to apply facts available with an adverse inference was supported by substantial evidence and in accordance with law, including 19 U.S.C. § 1677m(g) and including because the determination was made for the first time in the final results;

2.     Whether Commerce's determinations that CPW withheld information and impeded Commerce's investigation, failed to submit its cost reconciliation in the form and manner requested by Commerce, and did not cooperate to the best of its ability were supported by substantial evidence or otherwise in accordance with law?

## IV.   **STATEMENT OF THE CASE**

This appeal arises from the final results of the first administrative review of the Large Diameter Welded Pipe from Greece antidumping duty order. Appx09023-25, and Appx08993-09014.   In an antidumping duty investigation or review, Commerce requires respondents to submit cost information in Section D of the antidumping questionnaire.   In this case, Commerce issued a questionnaire to CPW, requesting that it submit a worksheet reconciling its financial accounting system fiscal year cost of sales (or equivalent) to the period of review cost of sales (or

---

[1]     The ALPPA Trade Committee agrees with CPW's jurisdictional statement, and therefore does not provide a separate jurisdictional statement, consistent with Fed. Cir. R. 28(b).

equivalent); a worksheet reconciling the period of review cost of sales to the total period of review costs from its cost accounting system, including a description of and quantity of each reconciling item; and provide a worksheet reconciling the total period of review costs from its cost accounting system to the total period of review costs of manufacture reported. Appx03376. Commerce provided a template for the requested cost reconciliation.

In its Section D questionnaire response, rather than submitting a complete cost reconciliation as requested, CPW submitted two separate reconciliations – one for full year 2019 and one for full year 2020. *See* Appx09004. CPW also provided production costs for the semifinished production stage and for raw materials, in addition to production costs for finished products. Commerce then issued CPW a supplemental Section D questionnaire, identifying deficiencies in CPW's cost data. Commerce again provided CPW with a cost reconciliation template for its use. *Id*. In CPW's first supplemental Section D questionnaire response, it again submitted cost data including costs for full year 2019 (including the portion that fell outside of the period of review) and failing to identify costs for nonsubject merchandise. *Id*. CPW also submitted voluminous worksheets of data with little to no accompanying explanation. *Id*.

Commerce then issued a second supplemental Section D questionnaire to CPW. *Id*. Commerce notified CPW that its "extensive calculations worksheets and

reconciliation are difficult to interpret because of the lack of adequate descriptions as to the methodology used in the normal records or in your reporting to Commerce." *Id*. Commerce also again questioned CPW's submission of two separate cost reconciliations, including one with data for full year 2019, including three months that fell outside of the period of review. *Id*. In its second supplemental Section D questionnaire response, CPW did not amend its cost reconciliation data. *See id.*

In the preliminary results, Commerce calculated a zero percent dumping margin for CPW. Appx08527; Appx08183-85. Commerce explained that it had received CPW's second supplemental questionnaire response shortly before the preliminary results and had not had time to consider it in those results, and so would consider that response for the final results. *See* Appx08181.

The ALPPA Trade Committee submitted a case brief, arguing at length that CPW's cost data was highly deficient and that Commerce should apply AFA to CPW as a result. Appx08536-54. CPW responded in its rebuttal brief, arguing that the application of AFA was unwarranted. *See* Appx08566-71.

In the final results, Commerce assigned CPW a dumping margin of 41.04%, based on the application of facts otherwise available with adverse inferences. *See* Appx08996. Following the Final Results, CPW submitted comments identifying purported clerical errors in Commerce's final analysis and calculations. *See* Appx09026-34. Commerce declined to consider CPW's alleged errors, finding that

CPW challenged methodological determinations by the agency rather than ministerial errors.  Appx09048.

CPW appealed to the U.S. Court of International Trade, which sustained Commerce's application of AFA to CPW.  Appx00012.  This appeal followed.

## V.    <u>SUMMARY OF ARGUMENT</u>

In the underlying administrative review of the *Large Diameter Welded Pipe from Greece* antidumping duty order, Commerce properly and lawfully applied total facts available with an adverse inference (also known as "adverse facts available" or "AFA") in calculating CPW's dumping margin.  Commerce did not wrongfully deprive CPW of the opportunity to comment on its decision to apply AFA, contrary to CPW's arguments.  Rather, Commerce acted consistently with law, including 19 U.S.C. § 1677m(g), and with the requirements of the substantial evidence standard.  Indeed, CPW did have the opportunity to present full arguments related to the application of AFA, since these issues were fully briefed at Commerce.

Commerce's decision to apply AFA to CPW was also in accordance with law and supported by substantial evidence because CPW withheld information requested by Commerce, failed to provide information in the form or in the manner requested by Commerce, significantly impeded the proceeding, and failed to act to the best of its ability to comply with Commerce's requests for information.  *See* 19 U.S.C. § 1677e(b).  Specifically, despite multiple requests by Commerce and agency

5

warnings that its data could not be interpreted, CPW provided unexplained, incomprehensible and unreliable cost data to the agency, including costs that did not reconcile. Such data are among the most fundamental pieces of information that a respondent must provide to the agency in an antidumping duty review. Because Commerce was unable to determine that CPW's cost data were unreliable, Commerce acted appropriately in assigning CPW a dumping margin based on AFA.

## VI. <u>ARGUMENT</u>

Commerce determines whether to apply facts otherwise available with an adverse inference (also known as "adverse facts available" or "AFA") according to the framework set forth in 19 U.S.C § 1677e. First, Commerce will use "facts otherwise available" to fill gaps in the record if: (1) necessary information is not available, or (2) an interested party (a) withholds information requested by Commerce, (b) fails to provide the information in the form or in the manner requested, (c) significantly impedes the proceedings, or (d) provides information that cannot be verified. 19 U.S.C. § 1677e(a); *id.* § 1677m(i)(3).

In selecting the information to utilize as facts otherwise available, Commerce may apply an adverse inference if it concludes that a respondent failed to cooperate by not acting "to the best of its ability to comply with a request for information." *Id.* § 1677e(b). A respondent fails to act to the best of its ability when it does not exert "maximum effort to provide Commerce with full and complete answers to all

inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). The standard does not require the respondent to have any ill intent in its reporting, and it "does not condone inattentiveness, carelessness, or inadequate record keeping." *Id.* Commerce may decide to apply AFA due to a respondent's "failure to cooperate to the best of respondent's ability, regardless of motivation or intent." *Id.* at 1383. In applying AFA, Commerce may rely on information derived from any stage of the proceeding, including the petition, a final determination in the investigation, final results of any previous review, or any other information placed on the record. *See* 19 U.S.C. § 1677e(b); *see also id.* § 351.308(c)(1)(i)-(iii).

Because Commerce lacks subpoena power over foreign respondents, *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012), the ability to utilize the facts available provisions and apply adverse inferences is critical to the agency's effective administration of the AD/CVD laws. *See, e.g.*, Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 868 (1994) ("SAA"), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199 (describing the facts available rules as "an essential investigative tool in {AD/CVD} proceedings"). As the U.S. Court of Appeals for the Federal Circuit has explained, "{w}ithout the ability to enforce full compliance with its questions, Commerce runs

the risk of gamesmanship and lack of finality in its investigations." *Essar Steel*, 678 F.3d at 1276.

In the underlying administrative review, Commerce's decision to apply AFA to CPW for failure to provide a complete, reliable and accurate cost reconciliation was supported by substantial evidence and consistent with law. A cost reconciliation is one of the most fundamental aspects of a company's response, as it helps to establish the validity of all of the respondent's reported costs. If the reported costs do not reconcile, the completeness and accuracy of those reported costs cannot be established, and they cannot be relied upon. CPW's submission of severely deficient cost data constituted a withholding of information that was requested by the agency, a failure to provide information in the form and manner requested, and the provision of information that could not be verified, and it significantly impeded the agency's proceeding. By repeatedly reporting such flawed and unusable data, CPW also failed to cooperate with the review by not acting to the best of its ability to comply with a request for information. As such, the application of AFA was supported by substantial evidence, consistent with 19 U.S.C. § 1677e and otherwise lawful.

A.    **Commerce's Decision to Apply Facts Available with an Adverse Inference Was Supported by Substantial Evidence and Consistent with Law, Including with 19 U.S.C. § 1677m(g)**

CPW first argues that Commerce's application of AFA to determine its dumping margin in the Final Results was inconsistent with 19 U.S.C. § 1677m(g),

because CPW did not have an opportunity to comment on the new methodology (*i.e.*,

AFA) employed by Commerce in the final results.  CPW Br. at 18-26.  19 U.S.C.

§ 1677m(g) states:

> Information that is submitted on a timely basis to the administering
> authority . . . during the course of a proceeding under this subtitle shall
> be subject to comment by other parties to the proceeding within such
> reasonable time as the administering authority . . . shall provide. The
> administering authority . . ., before making a final determination . . .
> shall cease collecting information and shall provide the parties with a
> final opportunity to comment on the information obtained by the
> administering authority . . . upon which the parties have not previously
> had an opportunity to comment.

(emphasis added).  The plain language of this statutory section thus makes clear that

it provides for the opportunity to comment on new factual information submitted by

interested parties to Commerce during the course of a proceeding.  *See id.*  CPW

does not allege that there was any new factual information submitted to the record

after the preliminary determination on which it was not permitted the opportunity to

comment.  *See* CPW Br. at 8-13.  Indeed, there was none.

As the CIT explained in its opinion, "Plaintiffs do not claim that Corinth

lacked an opportunity to comment on new information obtained by Commerce;

rather, they object to Commerce's failure to allow comment on its interpretation of

information already on the record."  Appx00006.  Yet, as the CIT correctly

concluded, this statutory "provision's mandate is confined to information obtained

by Commerce on which the parties have not yet had an opportunity to comment." Appx00007.  As such, 19 U.S.C. § 1677m(g) is inapplicable here.

CPW places new emphasis on what it calls Commerce's "newly created reconciliation table," in arguing that it was not afforded the opportunity to comment on this "information."  CPW Br. at 18, 21, 25.  But the reconciliation table did not contain new factual information.  It was simply another attempt by the agency to make sense of CPW's nonsensical reporting.  Indeed, Commerce made extensive efforts to attempt to analyze, organize and reconcile CPW's reported data and yet, because of the flawed nature of that data, could not do so.  *See* Appx09019-20.  But Commerce did not obtain new information on which CPW was not permitted to comment.  It simply analyzed data already submitted onto the record, by CPW itself.

19 U.S.C. § 1677m(g) does not require Commerce to provide parties with an opportunity to comment on any changes in its decision-making or changes to calculated dumping margins.  CPW's proffered arguments to the contrary would effectively prohibit Commerce from making any changes from the preliminary determination to the final determination, without allowing the parties to submit post-final determination arguments, which are not contemplated by the statute or permitted by Commerce's regulations or practice.

It is well established that Commerce may change its decisions between the preliminary results and the final results.  In fact, this Court explained in *NTN Bearing*

*Corp. v. United States* that "{p}reliminary determinations are 'preliminary' precisely because they are subject to change." 74 F.3d 1204, 1208 (Fed. Cir. 1995). The CIT also explained in *Peer Bearing Co. v. United States* that "Commerce is allowed flexibility to change its position from the preliminary determination to the Final Results, as along as Commerce explains the basis for the change and the explanation is supported by substantial evidence. Preliminary results, by their very nature, are preliminary and subject to change." 12 F. Supp. 2d 445, 456 (Ct. Int'l Trade 1998). More recently, the CIT upheld a significant change between Commerce's preliminary and final determinations – a change which ultimately resulted in the difference between an affirmative preliminary determination and a negative final determination (after remand). In *PT Kenertec Power System v. United States*, the CIT affirmed Commerce's change in position from its preliminary determination and the ultimately negative final determination, "following further investigation" and after it "amended its preliminary understanding" of the relevant issue. *PT Kenertec Power Sys. v. United States*, Consol. Ct. No. 20-03687, slip op. 21-175 at 10, 14 (Ct. Int'l Trade Dec. 28, 2021). This Court affirmed the CIT in a per curiam decision. J., *PT. Kenertec Power System v. United States*, No. 2022-1408 (Fed. Cir. Jan. 18, 2023). And the lower court has sustained Commerce's decision to apply AFA to a respondent for the first time in the final results (with no post-preliminary decision issued before the final results) on numerous occasions. *See,*

*e.g.*, *Deacero S.A.P.I. de C.V. v. United States*, 353 F. Supp. 3d 1303 (Ct. Int'l Trade 2018); *Fresh Garlic Producers Ass'n v. United States*, 121 F. Supp. 3d 1313 (Ct. Int'l Trade 2015).

CPW's citation to the CIT's findings *Koyo Seiko Co. v. United States* is inapposite and not binding on this Court. *See* CPW Br. at 20. In that case, plaintiffs argued they had detrimentally relied on Commerce's previously established methods (changes in the family averaging methodology and a packing adjustment methodology), which the agency then changed without notice. *Koyo Seiko Co. v. United States*, 516 F. Supp. 3d 1323, 1332 (Ct. Int'l Trade 2007). There was no analogous change in a well-established methodological choice here. *See also* Appx00006 (distinguishing *Koyo Seiko*). *Home Products International, Inc. v. United States* is similarly inapplicable, as, in that case, there was new benchmark information placed onto the record, on which parties had not had the opportunity to comment, leading Commerce to request a voluntary remand. 556 F. Supp. 2d 1338, 1340 (Ct. Int'l Trade 2008). *See also* CPW Br. at 24 (referencing "{t}he information that Commerce placed on the record in the administrative proceeding underlying *Home Products I*, a benchmark of international market prices . . ."). CPW does not accept that there simply was no new factual information entered onto the record of this review on which it was prevented from commenting.

In another CIT case, which CPW does not cite here, *U.S. Steel Corp. v. United States*, the plaintiff challenged Commerce's method for calculating indirect selling expenses in an antidumping duty administrative review, arguing that Commerce improperly changed its methodology between the preliminary and final results of the review.  712 F. Supp. 2d. 1330, 1354 (Ct. Int'l Trade 2010).   The CIT held that Commerce was permitted to change its decision between the preliminary results and final results.  *Id.* at 1355 ("It has long been recognized that Commerce is not bound by the positions taken or the methodologies employed in its preliminary determinations").  In its decision, the CIT cited defendant-intervenor's statement that "the whole purpose of the briefing process is to permit parties an opportunity to address aspects of Commerce's preliminary calculation methodology and attempt to convince Commerce to make appropriate revisions in the final decision."  The CIT further explained in *U.S. Steel*:

> In this case, as U.S. Steel emphasizes, Commerce had the requisite documentation in hand before the Preliminary Results issued. Nevertheless, because Commerce had not yet had an opportunity to digest that information or to carefully analyze POSCO's proposed payroll methodology, the agency relied on its default methodology — the relative sales value methodology — for purposes of the Preliminary Results.  After the Preliminary Results were released, Commerce reviewed POSCO's proposal more carefully, and considered it in light of the parties' briefing. As the Government explains, "after analyzing POSCO's explanation of the methodology in its case brief and after reviewing the evidence from the original and supplemental questionnaires, Commerce was satisfied that POSCO's methodology was accurate for the Final Results."  U.S. Steel's objections to Commerce's change of methodology must therefore be rejected.

*Id.* at 1355-56 (internal citations omitted). Similarly, in the review underlying this appeal, Commerce had CPW's deficient cost reporting in hand prior to the preliminary results. *See* Appx08181, Appx08191. However, because CPW's second supplemental questionnaire response with regard to deficiencies in its cost reporting had been received shortly prior to the preliminary results, and thus "Commerce had not yet had an opportunity to digest that information or to carefully analyze" it, Commerce explained that it would consider that response for purposes of the final results. *U.S. Steel*, 712 F. Supp. 2d at 1355; Appx08181. Then, as in *U.S. Steel*, after further analysis and review of the evidence from the original and supplemental questionnaires, including the highly deficient second supplemental questionnaire response, Commerce appropriately determined in the final results to apply AFA to calculate CPW's dumping margin. Appx08189-93.

CPW makes a secondary argument that, even if 19 U.S.C. § 1677m(g) did not apply, it was still improperly deprived of the opportunity to comment, contrary to the requirement that Commerce support its determination with substantial evidence. CPW Br. at 27-32. CPW alleges that Commerce failed to consider information that detracts from the weight of its determinations. *See id.* at 28. The cases cited by CPW are again, at best, inapposite. For example, CPW relies heavily on *Carpenter Technology Corp. v. United States* but fails to note that the opinion it cites is the CIT's decision to grant Defendant's request for a <u>voluntary remand</u>, based on the

14

specific standard of review that applies when such a remand is requested. 477 F. Supp. 3d 1356, 1361 (Ct. Int'l Trade 2020). CPW states that "the CIT held that Commerce did not support its change in methodologies with substantial evidence because it failed to provide parties with an opportunity to comment." CPW Br. at 30. Again, CPW fails to note that the CIT was <u>not</u> simply overturning Commerce's decision but assessing Commerce's request for a remand, based on the agency's own concerns regarding how it applied its methodology. No such concerns exist here.

Moreover, while the CIT found in *Carpenter Technology* that "Commerce did not have an opportunity to address Plaintiff's arguments," Commerce did have such an opportunity in the instant review. In fact, contrary to its arguments, CPW did in fact have the opportunity to comment – extensively – as to whether or not its deficient cost reporting justified the application of AFA. Remarkably, CPW makes its entire argument as to its lack of opportunity to comment with only one mere reference to the rebuttal brief it filed in this administrative review. *See* CPW Br. at 7 ("CPW generally responded to the Petitioner's general arguments that CPW's costs did not reconcile"). In the review, the ALPPA Trade Committee submitted a case brief, approximately half of which was devoted to its argument that the agency should apply total AFA to CPW for its failure to provide an adequate cost reconciliation and cost-buildups. *See* Appx09085. In response, CPW filed a comprehensive rebuttal brief. Appx09283. In that brief, CPW argued extensively

that Commerce should <u>not</u> apply AFA to calculate its dumping margin in the final results because, it alleged, it had cooperated fully in the proceeding and provided a comprehensive and detailed cost reconciliation.  *See* Appx09289-94.  Commerce fully addressed, and rejected, these arguments by CPW in its final decision memorandum, supporting its decision with substantial evidence.  *See* Appx08188-93.  Thus, CPW's argument now that it had no opportunity to comment on the application of total AFA to calculate its dumping margin lacks merit and should be rejected by the Court.

**B.**  **Commerce's Decision to Apply Total Adverse Facts Available Was Supported by Substantial Evidence and Consistent with Law, Including with 19 U.S.C. § 1677e**

CPW next argues that the record did not support Commerce's predicate findings under 19 U.S.C. § 1677e for the application of AFA.  CPW Br. at 32-58.  CPW's arguments should be rejected.  In the underlying review, Commerce properly found that necessary information for CPW was not available on the record, that CPW failed to provide such information in the form or manner requested, that CPW thus significantly impeded the proceeding, and that CPW failed to cooperate by not acting to the best of its ability to comply with a request for information.  Appx08189-93.  As such, Commerce appropriately determined to apply total AFA to calculate CPW's dumping margin in the final results.  *See id.*; 19 U.S.C. § 1677e.

CPW argues that it did not withhold information requested by Commerce, fail to provide the information in the form or in the manner requested, or significantly impede the proceedings, and thus that even the first prong of the 19 U.S.C. § 1677e framework was not met. CPW Br. at 32-55. CPW's primary argument on this point is that Commerce erred in reconciling CPW's costs. CPW argues that Commerce misunderstood CPW's data and thus "made one simple error in its attempt to recreate CPW's reconciliation worksheets – it twice subtracted CPW's "double counted" costs associated with the production of semi-finished pipe." *Id.* at 35. But if there was any misunderstanding of CPW's reconciliation, the fault lies with CPW alone. As the ALPPA Trade Committee emphasized in briefing to the agency, CPW repeatedly failed to provide detailed, step-by-step descriptions in order to explain its voluminous and convoluted reconciliation worksheets, leaving its reconciliation essentially incomprehensible. *See* Appx09096. Indeed, Commerce explained to CPW in its second supplemental Section D questionnaire: "Your extensive calculation worksheets and reconciliation are difficult to interpret because of the lack of adequate descriptions as to the methodology used in the normal records and in your reporting to Commerce." Appx06496. CPW was clearly put on notice yet still failed to adequately explain its reconciliation.

In its defense, CPW now argues that its cost records did not include any double counting and that it "provided detailed explanations demonstrating the flaws

in Commerce's conclusions in its arguments <u>before the CIT</u>." CPW Br. at 34. But that is not the question to be answered. CPW must prove that it built a clear record <u>at the agency level</u>. *See, e.g.*, *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337-38 (Fed. Cir. 2016) (quoting *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)) ("{T}he burden of creating an adequate record lies with interested parties and not with Commerce"). *See also Pro-Team Coil Nail Enter. v. United States*, 419 F. Supp. 3d 1319, 1338 (Ct. Int'l Trade 2019)) ("{I}t was {the respondent's} responsibility to build a clear record – not Commerce's").

CPW's purported lack of double counting was not at all ascertainable from the limited information submitted by CPW to Commerce during the review. As Defendant explained in its brief to the CIT:

> {T}he accounting analysis also showed that double counted costs remained in Corinth's cost of production file even after all identifiable reconciliation items have been removed . . . The cost reconciliation does not show how the double counted costs in Corinth's 2019 SAP cost report . . . were excluded for its reporting purposes, nor can this be determined from Corinth's section D responses.

Appx09078. *See also* Appx09080. Indeed, at the CIT, CPW admitted that it deviated from Commerce's preferred reconciliation structure in the way that it reported double-counted costs. *See* Appx00009.

CPW's *ex post facto* attempts to provide, in its briefs to the CIT and to this Court, explanation as to the double-counting should be rejected, as the respondent failed to provide this explanation or clarification at the appropriate time at the agency

18

level.   Indeed, CPW never provided any of this explanation in its questionnaire responses, despite Commerce's multiple, repeated requests for further clarification of its cost reconciliation.   While CPW claims that Commerce did not specifically ask in a supplemental questionnaire about the double-counting, this is clearly because Commerce was – justifiably – utterly confused by CPW's opaque reporting. CPW acknowledges that Commerce was clear with CPW about its difficulties in interpreting the respondent's reconciliation.   CPW Br. at 48.   And Commerce was not the only party experiencing confusion.   As the ALPPA Trade Committee stated in its brief, CPW's purported explanations of its reconciliation were "convoluted," and the reconciliation itself was "incomprehensible."   Appx09096.

Even if CPW's untimely explanation of its cost reconciliation were to be accepted now, Commerce's AFA determination rested on substantial evidence in addition to and apart from that double counting.   In addition to "fail{ing} to provide a proper cutoff of accounting periods and one complete {period of review ('POR')} cost reconciliation worksheet" (as described further below), Commerce identified significant additional deficiencies in CPW's cost reporting, including "differences in materials and conversion costs between costs reported in the audited financial statements and its SAP system for reportable and non-reportable products and between finished and semifinished products."   Appx09016-18.   The numerous and repeated deficiencies in CPW's three section D questionnaire responses demonstrate

that necessary information for CPW was withheld from the record and that CPW significantly impeded the proceeding.

Finally, CPW argues that it submitted all required information in the form and manner requested by Commerce (except, as it explains, when it did not). CPW Br. at 40-55. Nearly immediately after making this assertion, CPW admits that it made "slight deviations" to the template that Commerce required the respondent to use in its reporting. *Id.* at 40. CPW admitted this more readily to the CIT than it does here. *See, e.g.*, Appx09096 ("CPW did not isolate those costs associated with the months prior to the POR as a separate step because CPW did not produce MUC in those three months . . . The only other step in which CPW provided an alternate to Commerce's preferred reconciliation structure was the last step . . .").

For example, Commerce requires that respondents provide a complete cost reconciliation for the POR (here, April 19, 2019 through April 30, 2020). Commerce requires every respondent, as one of the first steps of the cost reconciliation (as outlined in the agency's cost reconciliation template), to reconcile the profit and loss data from the audited financial statements to the company's fiscal year trial balance. *See* Appx00162-63. Where a POR spans multiple fiscal years, the next step of reconciliation typically involves the removal of costs associated with the months outside of the POR from the first fiscal year's figures, and the addition of costs for the months from the second fiscal year that fall within the POR.

Instead of adhering to that request, CPW submitted "two separate reconciliations for different parts of the POR," which also included costs for months outside of the POR (i.e., the first three months of 2019). Appx09004. The agency noted this deficiency in a supplemental questionnaire to CPW, asking for a reconciliation for the "total POR" costs. Appx03933. Rather than adhering to this repeated request, "Corinth's first supplemental response again included two partial reconciliations instead of a single complete reconciliation." Appx00004.

Commerce gave CPW yet another opportunity to comply through a second supplemental questionnaire. Appx06496. In response, "Corinth again insisted that it could not combine multiple years in its SAP (cost accounting system) reporting, and thus needed to submit separate reconciliations." Appx00005. *See also* Appx09005. CPW claims that Commerce "amended" its request in the second supplemental questionnaire because it asked CPW to explain why it "was necessary to include the costs for the first 3 months of 2019 in your reported costs." CPW Br. at 43. But this request for explanation does not equate to an acceptance of the information not provided in the requested form. To the contrary, the inclusion of the non-POR months in the reconciliation was an example provided by Commerce of how CPW's reconciliation lacked adequate descriptions and was difficult to interpret. *Id.* And regardless, CPW did <u>not</u> adequately explain why it could not remove the first three months of 2019 (which were outside of the POR) from its cost

report.  In fact, CPW explicitly confirmed that its reporting system was capable of creating such a report.  It explained that its "SAP system can generate costing reports for a particular month or for a range of months in the same year."  Appx09005.  Such an admission – that CPW could have removed the non-POR months as requested – supports Commerce's finding that CPW did not "notify Commerce that it was unable to submit {its cost} information in the form and manner requested in Commerce's supplemental questionnaires," contrary to CPW's claim.  CPW Br. at 46 (quoting Appx08996).

Thus, Commerce repeatedly asked CPW to provide data in a certain form and manner, and CPW refused to do so without adequate explanation, even though it could have.  In sum, Commerce was reasonable in finding that CPW withheld information from the agency in the form of an accurate and reliable cost reconciliation, significantly impeded the proceeding, and failed to provide information in the form and manner requested.

### C.    Commerce's Determination to Apply Total AFA Was Warranted

Lastly, CPW argues that Commerce improperly applied total AFA, rather than neutral facts available or partial AFA.  The Court should reject these arguments.

Commerce reasonably concluded that CPW did not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation."  *See Nippon Steel*, 337 F.3d at 1382.  Indeed, the deficiencies outlined

by the ALPPA Trade Committee at the agency level, by Commerce in its final decision memorandum, by Defendant in its response brief to the CIT and previously in this brief show conclusively that CPW did not use "maximum effort" to respond fully and completely to Commerce's questionnaires in this review. *See generally* Appx09085; Appx09002-07; Appx09050.

CPW is incorrect that this review presented fact similar to cases where "gaps on the respondent record in each case were small and could otherwise be filled with other information on the record." CPW Br. at 57. For example, CPW's reporting failures were <u>not</u> analogous to the respondent in the proceeding underlying *Zhejiang Dunan Hetian Metal Co. v. United States*, where the Court found that Commerce could not apply AFA to calculate a dumping margin where the respondent did not provide subject sales quantities for the subject merchandise for a single month. 652 F.3d 1333, 1348 (Fed. Cir. 2011); CPW Br. at 57. To the contrary, the cost reconciliation is one of the most fundamental pieces of information provided in an antidumping proceeding. The reconciliation serves as the basis for tying a respondent's reported costs to its own books and records. Therefore, basic errors in the cost reconciliation are extremely problematic and raise significant uncertainties about all of a respondent's reported data. Unlike the cases cited by CPW, there was no simple facts available plug that could have been used to fill this gap. With an

unreliable and incomprehensible cost reconciliation on the record, Commerce was left with no reasonable choice but to rely on total AFA.

## VII.  <u>CONCLUSION</u>

For the reasons detailed above, the ALPPA Trade Committee respectfully submits that this Court should affirm the final results of Commerce's antidumping duty administrative review as to the application of AFA in calculating CPW's dumping margin.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Line Pipe*
*Producers Association Trade*
*Committee*

Dated: December 13, 2023

24

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-2094

**Short Case Caption:** Corinth Pipeworks Pipe Industry SA v. United States

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 5,509 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 12/13/2023        Signature: /s/ Timothy C. Brightbill

                        Name: Timothy C. Brightbill