23-2094

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**CORINTH PIPEWORKS PIPE INDUSTRY SA, CPW AMERICA CO.,**
*Plaintiffs-Appellants*

v.

**UNITED STATES, THE AMERICAN LINE PIPE PRODUCERS
ASSOCIATION TRADE COMMITTEE,**
*Defendants-Appellees*

Appeal from the United States Court of International Trade in
No. 1:22-cv-00063-LMG, Judge Leo M. Gordon

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS CORINTH PIPEWORKS
PIPE INDUSTRY S.A. AND CPW AMERICA CO.**

Kristin H. Mowry
Jill A. Cramer
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Ste. 810
Washington, DC 20015
*Counsel to Plaintiffs-Appellants Corinth
Pipeworks Pipe Industry S.A. and CPW
America Co.*

January 16, 2024

**FORM 9. Certificate of Interest**                                   Form 9 (p. 1)
                                                                      March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 23-2094

**Short Case Caption** Corinth Pipeworks Pipe Industry SA v. US

**Filing Party/Entity** Corinth Pipeworks Pipe Industry S.A. and CPW America Co.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/16/2024               Signature:  /s/ Kristin H. Mowry

                               Name:  Kristin H. Mowry

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☐ None/Not Applicable |
| Corinth Pipeworks Pipe Industry S.A. | | See Attachment |
| CPW America Co. | | See Attachment |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑    Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Jacob Max Reiskin<br>Kelley Drye & Warren LLP | Kimberly Rae Young<br>Vorys, Sater, Seymour and Pease, LLP | Frederick Paul Waite<br>Vorys, Sater, Seymour and Pease, LLP |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐    Yes (file separate notice; see below)    ☑  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## ATTACHMENT TO QUESTION 3

Corinth Pipeworks Pipe Industry S.A. is wholly-owned by Cenergy Holdings S.A., and Cenergy Holdings S.A. is majority-owned by Viohalco S.A. Viohalco S.A. stock and Cenergy Holdings S.A. stock are both publicly traded. CPW America Co. is a wholly-owned subsidiary of Warsaw Tubulars Trading Sp.zo.o and Warsaw Tubulars is a wholly owned subsidiary of Corinth Pipeworks Pipe Industry S.A.

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ........................................................ ii

INTRODUCTION .................................................................... 1

ARGUMENT .......................................................................... 2

   I.   THE UNITED STATES AND PETITIONER FAIL TO SHOW THAT COMMERCE MET ITS STATUTORY OBLIGATIONS UNDER 19 U.S.C. § 1677m(g) ................................ 2

   II.   THE UNITED STATES AND PETITIONER FAIL TO REBUT THAT REMAND WAS THE APPROPRIATE REMEDY WHEN COMMERCE FAILED TO ADDRESS CPW'S ARGUMENTS IN THE FIRST INSTANCE ................................ 13

   III.   THE UNITED STATES AND PETITIONER FAIL TO SHOW THAT COMMERCE'S APPLICATION OF FACTS OTHERWISE AVAILABLE WAS WARRANTED ................. 17

      A.   CPW Did Not Withold Information or Otherwise Impede Commerce's Investigation ................................ 17

      B.   CPW Did Not Fail To Submit its Cost Reconciliation in the Form and Manner Requested by Commerce ................................ 23

   IV.   THE UNITED STATES AND PETITIONER FAIL TO SUPPORT COMMERCE'S APPLICATION OF AFA AGAINST CPW ................................ 26

CONCLUSION AND RELIEF SOUGHT ................................ 29

## TABLE OF AUTHORITIES

**Cases**

Carpenter Tech. Corp. v. United States,
  477 F. Supp. 3d 1356 (Ct. Int'l Trade 2020)........................................... 13, 14, 15

CC Metals & Alloys, LLC v. United States,
  145 F. Supp. 3d 1299 (Ct. Int'l Trade 2016).........................................13

Changzhou Trina Solar Energy Co. v. United States,
  975 F.3d 1318 (Fed. Cir. 2020) ...............................................................13

Corinth Pipeworks Pipe Indus. SA v. United States,
  633 F. Supp. 3d 1314 (Ct. Int'l Trade 2023)............................................. 7, 18, 20

Hitachi Energy USA Inc. v. United States,
  34 F.4th 1375 (Fed. Cir. 2022) ...............................................................22

Home Prods. Int'l, Inc. v. United States,
  662 F. Supp. 2d 1360 (Ct. Int'l Trade 2009)..........................................8

Home Prods. Int'l. Inc. v. United States,
  556 F. Supp. 2d 1338 (Ct. Int'l Trade 2008)................................... 5, 7, 9

Huaiyin Foreign Trade Corp. v. United States,
  322 F.3d 1369 (Fed. Cir. 2003) ..............................................................17

Hyundai Elec. & Energy Sys. Co. v. United States,
  15 F.4th 1078 (Fed. Cir. 2021).................................................................28

Hyundai Elec. & Energy Sys. Co. v. United States,
  466 F. Supp. 3d 1303 (Ct. Int'l Trade 2020)..........................................28

Hyundai Elec. & Energy Sys. v. United States,
  No. 2021-2312, 2022 U.S. App. LEXIS 22235 (Fed. Cir. Aug. 11, 2022).... 26, 27

ii

Koyo Seiko Co., Ltd. v. United States,
    516 F. Supp. 2d 1323 (Ct. Int'l Trade 2007)........................................5, 6

Nan Ya Plastics Corp. v. United States,
    906 F. Supp. 2d 1348 (Ct. Int'l Trade 2013).................................. 14, 15

Nippon Steel Corp. v. United States,
    337 F.3d 1373 (Fed. Cir. 2003) ........................................ 26, 27

Novosteel SA v. United States,
    284 F.3d 1261 (Fed. Cir. 2002) ........................................ 20, 21

NTN Bearing Corp. v. United States,
    74 F.3d 1204 (Fed. Cir. 1995) ........................................11, 12

Peer Bearing Co. v. United States,
    12 F. Supp. 2d 445 (Ct. Int'l Trade 1998)...............................8

Pro-Team Coil Nail Enterprise v. United States,
    419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019).................................. 28, 29

Pro-Team Coil Nail Enterprise, Inc. v. United States,
    483 F. Supp. 3d 1242 (Ct. Int'l Trade 2020)........................................28

PT. Kenertec Power Sys. v. United States,
    Consol. Ct. No. 20-03687, slip op. 21-175 (Ct. Int'l Trade Dec. 28, 2021).........11

Qingdao Taifa Group Co., Ltd. v. United States,
    467 Fed. Appx. 887 (Fed. Cir. 2012) ...................................20

Qingdao Taifa Group Co., Ltd. v. United States,
    637 F. Supp. 2d 1231 (Ct. Int'l Trade 2009)........................................20

Shikoku Chems. Corp. v. United States,
    795 F. Supp. 417 (1992)..........................................7

SKF USA Inc. v. United States,
  263 F.3d 1369 (Fed. Cir. 2001) ...............................................................3

Stupp Corp. v. United States,
  5 F.4th 1341 (Fed. Cir. 2021) ..................................................................4

Tri-Union Frozen Products, Inc. v. United States,
  163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) ........................................10

Tung Mung Dev. Co., Ltd. v. United States,
  354 F.3d 1371 (Fed. Cir. 2004) .............................................................13

United States Steel Corp. v. United States,
  712 F. Supp. 2d 1330 (Ct. Int'l Trade 2010) ........................................16

Yama Ribbons & Bows Co. v. United States,
  653 F. Supp. 3d 1314 (Ct. Int'l Trade 2023) ..........................................4

Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,
  716 F.3d 1370 (Fed. Cir. 2013) ...............................................................8

Yee v. Escondido,
  503 U.S. 519 (1992) ......................................................................... 20, 21

Zhejiang DunAn Hetian Metal Co. v. United States,
  652 F.3d 1333 (Fed. Cir. 2011) ...................................................... 26, 27

**Statutes**

19 U.S.C. § 1516a ....................................................................................13

19 U.S.C. § 1677e ......................................................................... 1, 19, 20, 21

19 U.S.C. § 1677m ............................................................................ passim

28 U.S.C. § 2637 .....................................................................................19

**Other Authorities**

Large Diameter Welded Pipe From Greece, 87 Fed. Reg. 7120 (Dep't Commerce
    Feb. 8, 2022) ........................................................................................................2

Large Diameter Welded Pipe from Greece, 86 Fed. Reg. 43,172 (Dep't of
    Commerce Aug. 6, 2021).......................................................................... 2, 15, 19

**INTRODUCTION**

Defendant-Appellee the United States and Defendant-Appellee the American Line Pipe Producers Association Trade Committee ("Petitioner") unsuccessfully attempt to obscure the fundamental issue before this Court: Commerce's decision to apply adverse facts available ("AFA") was based on a factual error made by Commerce in the Final Results that the submitted cost database of Plaintiff-Appellants Corinth Pipeworks Pipe Industry S.A. and CPW America Co. (collectively, "CPW") did not reconcile with its financial accounting system.  See Br. of Def.-Appellee the United States (Dec. 13, 2023), ECF No. 23 ("Def. Br."); Resp. Br. of Def.-Appellee the American Line Pipe Producers Ass'n Trade Comm. (Dec. 13, 2023), ECF No. 24 ("Pet'r Br.").  CPW never had an opportunity to comment on Commerce's clear and uncontested error.  Commerce's decision was flawed for three separate reasons: (1) Commerce flouted 19 U.S.C. § 1677m(g), (2) Commerce ignored its mandate to consider all arguments that detract from the weight of its conclusion, thereby failing to support its determination with substantial evidence and (3) Commerce failed to implement the requirements of 19 U.S.C. § 1677e(a)(2) and its preconditions under 19 U.S.C. § 1677m(d).  For any of these three separate reasons, the Court must find that Commerce's Final Results were unsupported by substantial evidence and not in accordance with law.

**ARGUMENT**

## I.   THE UNITED STATES AND PETITIONER FAIL TO SHOW THAT COMMERCE MET ITS STATUTORY OBLIGATIONS UNDER 19 U.S.C. § 1677m(g)

Commerce's application of AFA against CPW in the Final Results was not in accordance with law because Commerce failed to comply with the requirements in 19 U.S.C. § 1677m(g).  Commerce deprived CPW of an opportunity to comment on Commerce's calculations and conclusions reflected in its reconciliation table underlying Commerce's change in methodology from one that resulted in a rate of zero percent for CPW in the Preliminary Results to one that resulted in the application of total AFA in the Final Results.  Compare Prelim. Results, 86 Fed. Reg. at 43,172[1], Appx08527, with Final Results, 87 Fed. Reg. at 7121, Appx09024; Final Calc. Mem. at Attachs. 1-2, Appx09019-09020.  The United States and Petitioner do not dispute that Commerce's analysis and calculations contained in the Final Results Calculation Memorandum, constituting the substance of Commerce's determination that CPW's costs did not reconcile, were never disclosed to CPW prior to the Final Results.  See generally Def. Br. at 18-19; Pet'r Br. at 9-10.  Rather, the United States and Petitioner wrongly claim, as the Court of International Trade ("CIT") erroneously found below, that Commerce's Final Results were in accordance with

---

[1] CPW adopts the short citations to record documents used in its opening brief.

law because 19 U.S.C. § 1677m(g) did not require that Commerce provide CPW with an opportunity to comment on Commerce's analysis of CPW's costs.

The United States' and Petitioner's assertions that the right to comment under 19 U.S.C. § 1677m(g) applies only to new factual information submitted by other parties to Commerce rather than information Commerce itself places on the record, see Def. Br. at 19, Pet'r Br. at 9-10, conflicts with the legislative history of the statute. See Opening Brief of Pls.-Appellants CPW at 19-20 (Sept. 29, 2023) (Nonconfidential Version), ECF No. 16 ("CPW Br."). This Court "review{s} questions of statutory interpretation without deference." SKF USA Inc. v. United States, 263 F.3d 1369, 1378 (Fed. Cir. 2001) (citation omitted). The Court is not bound by the CIT's interpretation of 19 U.S.C. § 1677m(g) when the legislative history of 19 U.S.C. § 1677m(g), which the United States and Petitioner pointedly ignore in their response briefs, confirms that Congress intended for the statute to be broadly applicable to cover information that Commerce itself places on the record. See CPW Br. at 19-20 (showing that Congress drafted 19 U.S.C. § 1677m(g) to ensure that interested parties are informed of "any factual information that will form the basis of the agency's decision").

Additionally, based on its own past practice, Commerce acted arbitrarily in failing to provide CPW with an opportunity for comment on Commerce's reconciliation calculations and analysis. See SKF, 263 F.3d at 1382 ("{I}t is well-

established that 'an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.'" (citation omitted)).  In Yama Ribbons & Bows Co. v. United States, 653 F. Supp. 3d 1314 (Ct. Int'l Trade 2023), the CIT partially granted the United States' request for voluntary remand during the course of litigation for interested parties to "have the opportunity to comment on" information that Commerce inadvertently forgot to place on the record and relied on in making its determination "as specified in 19 U.S.C. § 1677m(g)."  See id. at 1327-28.  Here, by contrast, Commerce failed to provide CPW with an opportunity to comment on its reconciliation analysis and calculations that Commerce relied on to determine that CPW's costs did not reconcile.  Commerce's failure to provide CPW with an opportunity to comment was not in accordance with law because Commerce offered "insufficient reasons" for treating this review different from the proceeding underlying Yama.

The United States and Petitioner incorrectly maintain that Commerce's reconciliation analysis and calculations are not subject to 19 U.S.C. 1677m(g) because Commerce does not "generate" any new information when it performs calculations using data on the record.  See Def. Br. at 19; see also Pet'r Br. at 10. The Court, however, has previously sustained Commerce's finding that the statistical manipulation of data on the record constitutes factual information.  See Stupp Corp. v. United States, 5 F.4th 1341 (Fed. Cir. 2021).  In Stupp, the Court sustained

4

Commerce's determination to reject a portion of a respondent's case brief for containing untimely "factual information" based on the respondent's analysis of data that was already on the record.  See id. at 1348-50.  Here, Commerce's reconciliation table was not a margin calculation but rather Commerce's methodological manipulation of data on the record beyond CPW's submitted reconciliation. Consistent with Stupp, Commerce did generate factual information in its reconciliation table.

Further, as discussed in CPW's opening brief, Commerce's obligation to provide an opportunity to comment under 19 U.S.C. § 1677m(g) is particularly heightened when that information, including Commerce's manipulation of data on the record, serves as the basis for a change in Commerce's methodology.  See CPW Br. at 20-26 (relying on the holdings in Koyo Seiko Co., Ltd. v. United States, 516 F. Supp. 2d 1323, 1333 (Ct. Int'l Trade 2007) and Home Prods. Int'l. Inc. v. United States, 556 F. Supp. 2d 1338, 1340 (Ct. Int'l Trade 2008) ("Home Products I") to demonstrate that Commerce's reconciliation analysis is subject to 19 U.S.C. § 1667m(g)).  Both Koyo and Home Products I represent highly persuasive authority given their factual similarities to this action.  Here, Commerce's reconciliation table contained Commerce's methodological change to the reconciliation submitted by CPW by twice deducting CPW's costs of production of semi-finished pipe that was used as an input in the production of large diameter welded pipe (referred to by

Commerce as "double counted" costs.  See CPW Br. at 53-54 (citing Final Calc. Mem. at Attachs. 1-2, Appx09019-09020).  That change in methodology led directly to Commerce's erroneous conclusion that CPW's costs did not reconcile.

The United States and Petitioner fail to effectively distinguish the holding in Koyo from this case.  The United States' assertion that "Commerce's final determination was not a 'change in methodology'" cuts against Commerce's own actions in this case.  See Def. Br. at 21; see also Pet'r Br. at 12.  Commerce declined to address CPW's ministerial error allegations concerning the errors present in Commerce's reconciliation table on the merits, finding only that the issue CPW raised was "methodological," not ministerial in nature.  See Ministerial Error Mem. at 4, Appx09048.  There is no reasonable reading of the record that supports the conclusion that Commerce's reconciliation table did not represent a change in "methodology" given that Commerce itself denied CPW's ministerial comments on such a basis.  Here, unlike in Koyo where the CIT held that Commerce lawfully revised its methodology after providing an opportunity to comment on the change prior to Commerce's final determination, CPW was not afforded a similar opportunity to comment on Commerce's methodological change to twice deduct CPW's "double counted" costs.  See Koyo, 516 F. Supp. 2d at 1333-34.

Further, relying on the CIT's incorrect holding below, the United States argues that CPW's reliance on Koyo is misplaced because that case was premised on the

6

fact that the respondent detrimentally relied on Commerce's prior methodology and CPW makes no such reliance claim here.  See Def. Br. at 21; see also CPW, 633 F. Supp. 3d at 1322, Appx00007.  To the contrary, "principles of fairness . . . prevent Commerce from changing its methodology without adequate notice" because CPW relied on Commerce's reconciliation methodology twice.  Koyo, 516 F. Supp. 2d at 1333 (citing Shikoku Chems. Corp. v. United States, 795 F. Supp. 417 (1992)).  First, CPW relied on the reconciliation methodology employed by Commerce in the initial investigation (i.e., reconciling CPW's reported costs to the calendar year) when preparing the cost reconciliation worksheets that it submitted in the first review.  See CPW Br. at 21, n. 5.  Second, seeing that Commerce again used CPW's data in the Preliminary Results and that Commerce asked no further questions on its costs reconciliation, CPW reasonably relied on Commerce's acceptance of its cost reconciliation.  See id.  Commerce's failure to allow CPW to comment on Commerce's change in its reconciliation methodology thereby rendered Commerce's reliance on AFA not in accordance with law.

The reasoning in Home Products I is also instructive here because Commerce's ultimate determination on remand in that case demonstrates how allowing an interested party to comment on factual information leading to a change in methodology ensures that Commerce meets its obligation to "calculate dumping margins as accurately as possible."  Yangzhou Bestpak Gifts & Crafts Co., Ltd. v.

7

United States, 716 F.3d 1370, 1379 (Fed. Cir. 2013) (citation omitted).  In the remand

redetermination ordered by the CIT in Home Products I, Commerce reverted to its

preliminary methodology after considering comments from the interested parties.

Home Prods. Int'l, Inc. v. United States, 662 F. Supp. 2d 1360 (Ct. Int'l Trade 2009)

("Home Products II").  The ultimate result in Home Products II is precisely the

outcome CPW predicts here given that Commerce made a clear error in finding that

CPW's costs did not reconcile.  Once CPW was able to respond to Commerce's

faulty reconciliation table in the first instance at the CIT, neither the United States

nor Petitioner rebutted CPW's arguments that its costs fully reconciled and instead

merely repeated Commerce's erroneous conclusions.  See CPW 56.2 Br. at 13-36,

Appx09124-09142; see also Def. Resp. to Pls.' Mot. for J. on the Admin. Record at

21-26 (Jan. 6, 2023) (Nonconfidential Version), ECF No. 33, Appx09076-09081

(failing to address CPW's arguments that its costs fully reconcile); Def.-Intervenor

Petitioner's Resp. Br. at 10-11 (Jan. 20, 2023), ECF No.35, Appx09098-09099

(same).[2]  To meet Commerce's obligation to calculate CPW's margin as "accurately

---

[2] The Petitioner relies on Peer Bearing Co. v. United States, 12 F. Supp. 2d 445 (Ct. Int'l Trade 1998) to support its claim that Commerce is allowed flexibility in changing its position from the preliminary results. See Pet'r Br. at 11. In Peer Bearing, the CIT held that Commerce may change its position so long as it "explains the basis for the change and the explanation is supported by substantial evidence." 12 F. Supp. 2d at 449.  Here, Commerce's change in methodology was not supported by substantial evidence given that CPW's costs fully reconciled.

as possible," Commerce should have made its reconciliation analysis available for comment by CPW.

The United States and Petitioner are incorrect in claiming that Home Products I is distinguishable because in that case the parties did not have an opportunity to comment on "new benchmark information that was placed on the record." Def. Br. at 22; see also Pet'r Br. at 22. In both Home Products I and this appeal, Commerce relied on factual information in its own calculations to make a methodological change in its analysis. In Home Products I, Commerce relied on a benchmark of international market prices "to develop{} a new methodology" based on its own calculations "to evaluate the reliability of a Respondent's input purchases." 556 F. Supp. 2d at 1340. Here, Commerce's novel attempt to reconcile CPW's costs, an entirely new manipulation of CPW's submitted cost data that was not previously on the record (i.e., new factual information), embodied Commerce's methodological choice to twice remove CPW's double counted costs. This Court should find the holding in Home Products I, where the CIT granted Commerce's request for voluntary remand, to be highly instructive that the comment requirements under 19 U.S.C. § 1677m(g) applied to Commerce's reconciliation analysis that contained its methodological choice to twice deduct CPW's "double counted" costs and proved outcome determinative in Commerce applying AFA against CPW in the Final Results.

The United States unconvincingly relies on <u>Tri-Union Frozen Products, Inc.</u> <u>v. United States</u>, 163 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) for the proposition that "Commerce's interpretation of factual information does not lead to the conclusion that its final determination is subject to comment." Def. Br. at 19 (quoting <u>Tri-Union</u>, 163 F. Supp. 3d at 1289). In <u>Tri-Union</u>, the CIT held that Commerce lawfully found that a margin calculation that a respondent placed on the record constituted factual information. <u>See</u> 163 F. Supp. 3d at 1288-89. The CIT noted in dicta that Commerce defining factual information as covering a margin calculation placed on the record by a respondent comports with the notice requirements under 19 U.S.C. § 1677m(g) that do not apply to Commerce's "findings that it makes or generates internally." <u>Tri-Union</u>, 163 F. Supp. 3d at 1289. Again, this Court is not bound to the CIT's statutory interpretations especially where they conflict with the legislative history. Regardless, the type of factual information at issue in <u>Tri-Union</u> is distinguishable from this appeal. Unlike <u>Tri-Union</u>, here, Commerce's reconciliation analysis was not a standard margin calculation with established adjustments but instead a reconciliation analysis that was specific to CPW's internal accounting practices. <u>See</u> Final Calc. Mem., Appx09015-09022. Commerce's reconciliation table containing its methodological choice to twice deduct CPW's "double counted" costs is precisely the type of factual information beyond Commerce's standard margin calculations

that must be disclosed to all interested parties under 19 U.S.C. § 1677m(g) prior to Commerce changing its methodology in the Final Results.

Nor should this Court be persuaded by Petitioner's argument that requiring Commerce to solicit comments on factual information that forms the basis for a change in methodology would effectively prohibit Commerce from making any changes from the preliminary to the final determination. See Pet'r Br. at 10-11 (citing NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995), PT. Kenertec Power Sys. v. United States, Consol. Ct. No. 20-03687, slip op. 21-175 at 10, 14 (Ct. Int'l Trade Dec. 28, 2021)). Commerce can lawfully make changes to its preliminary results so long as it makes any factual information that serves as the basis for any change in methodology available for comment. Petitioner's reliance on NTN Bearing to support its argument that Commerce may lawfully change its determinations between the preliminary and final results without providing an opportunity for comment is unavailing as both a factual and substantive matter. See Pet'r Br. at 17. Factually, the respondent's error in NTN Bearing became apparent after Commerce released its preliminary calculations, see 74 F.3d at 1207, whereas here  Commerce's error was not apparent until the Final Results after the briefing deadlines had passed.[3] If anything, the holding in NTN Bearing supports CPW's

---

[3] The facts in PT Kenertec are similarly distinguishable. In PT Kenertec, nowhere did the Court highlight that any party lacked notice of Commerce's change in

argument that Commerce must provide interested parties with an opportunity to comment on a change in methodology between the preliminary and final results.  In holding that Commerce abused its discretion in not considering the corrections submitted by the respondent in <u>NTN Bearing</u>, the Federal Circuit emphasized that Commerce's duty is to "determine dumping margins 'as accurately as possible'" and that a "correction of {the respondents'} errors would {not} have required beginning anew."  <u>Id.</u> at 1208 (citation omitted).  In the facts underlying this case, like in <u>NTN Bearing</u>, Commerce would not have had to begin anew in order to solicit comments because it could have simply issued an additional supplemental questionnaire or post-preliminary determination including its reconciliation table and then CPW could have addressed Commerce's errors in its case brief.  <u>See</u> CPW Br. at 51-52.

In short, the United States' and Petitioner's arguments that Commerce was not obligated to provide CPW with an opportunity to comment on Commerce's reconciliation analysis under 19 U.S.C. § 1677m(g) are wholly unpersuasive and Commerce's failure to provide CPW with such an opportunity thereby rendered its Final Results not in accordance with law.

---

methodology and was unable to address any arguments in its case brief.  <u>See</u> No. 20-03687, slip op 21-175 at 12-14.

## II. THE UNITED STATES AND PETITIONER FAIL TO REBUT THAT REMAND WAS THE APPROPRIATE REMEDY WHEN COMMERCE FAILED TO ADDRESS CPW'S ARGUMENTS IN THE FIRST INSTANCE

Commerce's application of AFA against CPW was unsupported by substantial evidence because Commerce failed to consider information that detracted from the weight of its conclusion. See Tung Mung Dev. Co., Ltd. v. United States, 354 F.3d 1371, 1378 (Fed. Cir. 2004) (internal citations omitted); see also 19 U.S.C. § 1516a(b)(1)(B)(i); Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020). Commerce did not consider all arguments that detract from the weight of its conclusion to apply AFA in the Final Results in that it failed to provide CPW with an opportunity to comment on Commerce's change in methodology to twice remove CPW's "double counted" costs. The CIT has repeatedly found that remand is the appropriate remedy where Commerce has failed to consider a party's arguments against Commerce's change in methodology. See Carpenter Tech. Corp. v. United States, 477 F. Supp. 3d 1356, 1359-61 (Ct. Int'l Trade 2020)[4]; CC Metals & Alloys, LLC v. United States, 145 F. Supp. 3d 1299, 1310-11 (Ct. Int'l Trade 2016); Nan Ya Plastics Corp. v. United States, 906 F. Supp.

---

[4] Petitioner quibbles with CPW's characterization of the holding in Carpenter because the standard of review in that case pertained to request for voluntary remand. See Pet'r Br. at 15 (citing Carpenter, 477 F. Supp. 3d at 1362). Nonetheless, the CIT noted that granting a remand was appropriate based on the "the need to accurately calculate margins" and Commerce would "benefit from considering {respondent's} arguments in the first instance." Carpenter, 477 F. Supp. 3d at 1362 (internal quotation and citation omitted).

2d 1348, 1354 (Ct. Int'l Trade 2013).  Those cases are particularly compelling here given the factual similarities with CPW's situation.

The United States' and Petitioner's attempts to distinguish this case from both Carpenter and Nan Ya fall flat.  See Nan Ya, 906 F. Supp. 2d at 1354; Carpenter, 477 F. Supp. 3d at 1362.  Neither the United States nor Petitioner debates the outcomes in both these cases – that the CIT either ordered or granted a request for voluntary remand where Commerce failed to provide interested parties with an opportunity to challenge Commerce's calculations that had served as the basis for Commerce's revision to its application of AFA in the Final Results.  See Carpenter, 477 F. Supp. 3d at 1361 (explaining that Commerce changed methodology for calculating its AFA rate from using the "highest (non-aberrational) transaction-specific margin" to calculating "a surrogate cost of production" for certain sales in the final results using data from a respondent); Nan Ya , 906 F. Supp. 2d at 1351 (detailing that Commerce changed its methodology from calculating its AFA rate from using data from the prior review to using the highest transaction-specific margin that Commerce calculated for the other cooperating respondent). In Nan Ya and Carpenter, the calculations at issue were Commerce's calculations of an AFA rate using the respondent's data on the record.  Here, Commerce's reconciliation table issued with the Final Results contained Commerce's manipulation and analysis of CPW's data to determine that AFA was appropriate.

14

Instead of acknowledging these similarities, the United States and Petitioner argue that this action is distinguishable from Carpenter and Nan Ya because, unlike in those cases, CPW did have an opportunity in briefing to respond to Petitioner's separate argument for AFA and to demonstrate that CPW's costs reconciled.  See Def. Br. at 23-24; Pet'r Br. at 15-16.  CPW's argument is not that it did not have an opportunity to respond to Petitioner's request for AFA but rather that CPW did not have an opportunity to respond to Commerce's underlying reconciliation analysis and determination to erroneously twice remove CPW's "double counted" costs.  In the Preliminary Results, Commerce disregarded Petitioners' Pre-Preliminary Comments calling for AFA and relied on CPW's reported cost reconciliation to calculate a zero percent margin for CPW.  See Prelim. Dec. Mem. at 2, Appx08181; Prelim. Results, 86 Fed. Reg. 43,172, Appx08527.  Commerce gave no indication that it perceived problems with CPW's cost reconciliation, let alone alerted CPW to the specific concerns disclosed for the first time in the Final Results.  Compare Prelim. Dec. Mem. at 2, Appx08181, with Final Calc. Mem. at 2-4, Attachs. 1-2, Appx09016-09020.  Petitioner's subsequent administrative case brief calling for total AFA was nearly identical in wording to the arguments raised in Petitioner's Pre-Preliminary Comments and rejected by Commerce in the Preliminary Results. Compare Letter on Behalf of Petitioner to Dep't of Commerce re: Pre-Preliminary Comments at 1-7 (July 9, 2021), Appx06471-06477, with Pet'r Case Brief at 3-11,

15

Appx08546-08554.  The fact that CPW responded to Petitioner's general arguments does not mean that CPW had an opportunity to comment on Commerce's methodological choices contained in its reconciliation table and its erroneous decision to apply total AFA for the first time at the Final Results.

Petitioner cites to United States Steel Corp. v. United States, 712 F. Supp. 2d 1330, 1354-56 (Ct. Int'l Trade 2010), for the proposition that Commerce may lawfully change its decision between the preliminary and final results.  See Pet'r Br. at 13-14.  That case, in reality, supports CPW's argument that Commerce's Final Results were not supported by substantial evidence because Commerce did not provide CPW with an opportunity to comment on Commerce's reconciliation analysis.  In U.S. Steel, the CIT explained that Commerce changed its methodology in the final results based on documentation provided before the preliminary results and considered its methodology "in light of the parties' briefing."  712 F. Supp. 2d at 1355-56.  Quoting an argument from the respondent, the CIT noted that the purpose of briefing is to allow parties "to convince Commerce to make appropriate revisions in the final decision."  Id. at 1355.  The CIT below disregarded this important principle in upholding Commerce's failure to consider critical arguments that detracted from the weight of its conclusions, thereby rendering its decision unsupported by substantial evidence.

### III. THE UNITED STATES AND PETITIONER FAIL TO SHOW THAT COMMERCE'S APPLICATION OF FACTS OTHERWISE AVAILABLE WAS WARRANTED

Commerce's application of facts otherwise available was unsupported by substantial evidence and otherwise not in accordance with law because CPW's costs fully reconciled. See CPW Br. at 32-55. Contrary to the assertions by the United States, this is not an instance where CPW "provides an alternative to Commerce's interpretation of the submitted data." Def. Br. at 32. Rather, no "reasonable mind" could accept Commerce's conclusions that: 1) CPW withheld information or otherwise impeded Commerce's investigation by failing to submit a full cost reconciliation and 2) CPW failed to submit its reconciliation in the form and manner requested by Commerce. See Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003); see also Final I&D Mem. at 4-6, Appx08996-08998.

### A. CPW Did Not Withold Information or Otherwise Impede Commerce's Investigation

As shown in CPW's opening brief, the record evidence establishes that CPW's costs fully reconciled. See CPW Br. at 35-40. Commerce's conclusion to the contrary was based on its own simple error to twice subtract CPW's "double counted costs" associated with the production of semi-finished pipe. See id. Importantly, neither the United States nor Petitioner directly rebuts CPW's explanation that its costs fully reconcile and instead merely repeat Commerce's erroneous conclusions.

See, e.g., Def. Br. at 30-31 (stating that CPW "dedicates a significant portion of its brief to the irrelevant assertion that its costs do in fact reconcile"); Pet'r Br. at 17-19 (arguing that whether CPW's costs reconciled is "not the question to be answered"). Rather than refuting CPW's arguments, the United States and Petitioner maintain that the CIT correctly held that "these arguments are misplaced because the 'burden of creating of an adequate record lies with interested parties and not with Commerce.'" Def. Br. at 30 (quoting CPW, 633 F. Supp. 3d at 1325, Appx00010); see also Pet'r Br. at 17-19. But, as noted, the information submitted by CPW to Commerce is more than adequate to demonstrate that its costs reconciled. Commerce never disclosed its alternative reconciliation analysis until it was too late for CPW to comment. The burden of creating an adequate record should not entail mind-reading.

The record does not support the claim that "Commerce acted reasonably in rejecting {CPW}'s cost data." Def. Br. at 30; see also Pet'r Br. at 17-18. There is no reasonable reading of the record that CPW failed to establish a clear record when Commerce itself was able to replicate CPW's reconciliation but for one clear error. Compare Final Calc. Mem. at Attachs. 1-2, Appx09019-09020 (showing Commerce's reconciliation), with CPW 56.2 Br. at Ex. 1, Appx09157-09165 (demonstrating that CPW's costs reconciled but for Commerce's determination to twice remove CPW's "double counted" costs (highlighted in yellow)). CPW

18

explained how its costs reconciliation worksheets maintained in the normal course of business present "the accumulation of costs at each stage of production" but CPW accounted for these "double counted" costs in the database that it submitted to Commerce. <u>See</u> Second Suppl. Section D Response at (2nd Supp D)-2 to (2nd Supp D)-3, Appx06986-06987. Further, CPW established that it followed the methodology Commerce used to verify CPW's costs in the initial investigation. <u>See</u> Rebuttal Factual Information at Ex. 1, Appx08904-08935. CPW's data were deemed sufficient for Commerce to calculate a dumping margin of zero percent for CPW in the Preliminary Results. <u>See</u> <u>Prelim. Results</u>, 86 Fed. Reg. at 43,172, Appx08527. The record was clear but for Commerce's error to deviate from the explanations provided by CPW that its reconciliation worksheets accounted for its "double counted" costs. CPW neither withheld information nor otherwise impeded Commerce's investigation.

To the extent that Commerce had misplaced doubts that CPW's costs fully reconciled, Commerce had a statutory obligation to under 19 U.S.C. § 1677e(a)(2) to provide CPW with notice and opportunity to remedy the alleged deficiency that CPW's cost database included "double counted" costs. <u>See</u> CPW Br. at 47-57. The United States is incorrect that CPW "neither exhausted its administrative remedies with respect to these claims nor raised them before the trial court." Def. Br. at 37 (citing 28 U.S.C. § 2637(d)). A party "may seek judicial review of an issue that it

19

did not raise in a case brief if Commerce did not address the issue until its final

decision, because . . . the party would not have had a full and fair opportunity to raise

the issue at the administrative level." Qingdao Taifa Group Co., Ltd. v. United States,

637 F. Supp. 2d 1231, 1236 (Ct. Int'l Trade 2009), aff'd without opinion, 467 Fed.

Appx. 887 (Fed. Cir. 2012).    CPW could not have addressed Commerce's

methodological decision to twice remove CPW's "double counted" costs because

Commerce did not release its reconciliation table prior to the Final Results.    CPW,

therefore, did not waive its argument by not raising it at Commerce because it had

no opportunity to raise any arguments about Commerce's calculations in its case

brief before the agency.

Nor did CPW fail at the CIT to exhaust the argument that Commerce's

determination to apply AFA against CPW was not in accordance with law because

Commerce did not comply with the requirements of 19 U.S.C. § 1677e(a). Cf. Def.

Br. at 37 (citing Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

"{O}nce a . . . claim is properly presented, a party can make any argument in support

of that claim; parties are not limited to the precise arguments that they made below."

Yee v. Escondido, 503 U.S. 519, 534 (1992).  The United States' waiver claim turns

on a footnote in the CIT's opinion that CPW's argument "might have been better

made under § 1677m(d)." Def. Br. at 38 (quoting CPW, 633 F. Supp. 3d at 1322, n.

7, Appx 00008).    CPW, however, did "unquestionably" argue below that

20

Commerce's determination to rely on facts otherwise available was not supported by substantial evidence under 19 U.S.C. § 1677e(a) because CPW did not withhold necessary information.  Yee, 503 U.S. at 534; see also CPW's 56.2 Br. at 16-17, Appx09127-09128 (explaining that "Commerce unreasonably disregarded CPW's own data and applied facts available under 19 U.S.C. § 1677e(a) and improperly found that a total adverse inference was warranted under section 1677e(b)" given that CPW's costs reconciled).[5]  In its opening brief before this Court, CPW explained that 19 U.S.C. § 1677e(a)(2), which provides for Commerce's authority to rely on facts otherwise available, is subject to the conditions of 19 U.S.C. § 1677m(d), which requires that Commerce inform a respondent of any deficiency in its responses and to the "extent practicable" provide the respondent with an "opportunity to remedy or explain the deficiency."  See CPW Br. at 47 (quoting 19 U.S.C. § 1677m(d)).  As CPW "properly presented" its claim that Commerce did not lawfully apply facts otherwise available under 19 U.S.C. § 1677e(a) at the CIT through the above-quoted language in its Rule 56.2 brief, it can now make any argument in support of that claim including that Commerce's authority to apply facts otherwise available is

---

[5] The United States reliance on Novosteel is also misplaced because this action is factually distinguishable.  See Def. Br. at 37.  Unlike in Novosteel, where the Court held that a party waived an argument by only raising in its reply brief at the lower Court, see 284 F.3d at 1274, CPW presented this argument in its opening brief at the CIT.

subject to the preconditions laid out in 19 U.S.C. § 1677m(d). In short, CPW's arguments are ripe for review by this Court.

The United States and Petitioner both contend that Commerce complied with 19 U.S.C. § 1677m(d) by informing CPW that its cost reconciliation was deficient and asking questions regarding CPW's submitted reconciliation. See Def. Br. at 39; Pet'r Br. at 17. While it is true that a respondent has a duty to establish a clear record, an equal burden falls on Commerce to make its requests "clear and give {that respondent} a chance to correct the error prior to the issuance of a final decision." Hitachi Energy USA Inc. v. United States, 34 F.4th 1375, 1384 (Fed. Cir. 2022) (internal citation and quotation omitted). Here, Commerce failed to meet this burden because it never informed CPW of the specific reason – the erroneous double deduction of semi-finished pipe costs – underlying Commerce's determination to go beyond CPW's submitted reconciliation. See CPW Br. at 47-49. In claiming that Commerce asked CPW detailed questions about its reconciliations, the United States does not cite to a single document on the record. See Def. Br. at 39. Nor could the United States reference such a question to CPW because Commerce never expressed concerns that it would need to twice remove CPW's "double counted" costs prior to the Final Results. See CPW Br. at 48-49 (noting that Commerce's only reference to "double counted" costs was to ask CPW for an explanation for why it could not

22

generate a single reconciliation report given CPW's assertion that a single report would include "double counted" costs).

Petitioner meanwhile merely references Commerce's question to CPW asking generally for more detailed descriptions of the methodology used by CPW. See Pet'r Br. at 17. Petitioner's implication that Commerce was too confused by CPW's submitted reconciliation to ask further questions about CPW's "double counted" costs is nonsensical. See id. at 19. Once Commerce found CPW's costs did not reconcile, all Commerce needed to have done was release its reconciliation analysis to CPW either in a post-preliminary determination or a supplemental questionnaire in the six months between Commerce issuing its Preliminary and Final Results. See CPW Br. at 51-52. Commerce's failure to allow CPW to either explain or clarify the alleged discrepancies identified by Commerce in CPW's cost reconciliation thereby rendered Commerce's reliance on facts otherwise available not in accordance with law.

### B. CPW Did Not Fail To Submit its Cost Reconciliation in the Form and Manner Requested by Commerce

Commerce's reliance on facts otherwise available was also unsupported by substantial evidence and otherwise not in accordance with law because CPW submitted its cost reconciliation in the form and manner requested by Commerce. See CPW Br. at 47-55. The United States and Petitioner maintain that Commerce correctly found that CPW did not submit its reconciliation in the form and manner

requested by Commerce because CPW submitted two separate reconciliations (one

for 2019 and one for 2020) and CPW's cost reconciliation included data from outside

of the period of review ("POR").  See Def. Br. at 26-29; Pet'r Br. at 20-22.  Both the

United States and Petitioner fail to recognize that Commerce's requests are not made

in a static environment and instead can, and often do, change throughout a

proceeding.  Commerce's own questionnaire acknowledges the dynamic nature of

its proceedings, particularly with respect to a cost reconciliation, as Commerce's

template reconciliation chart stated that "{t}he items and order of the reconciliation

will vary by situation."  First Section D Supp. Questionnaire at 6, Appx03934.

Further, Commerce itself recognized that "the format of reconciliation of submitted

costs to the audited financial statement costs depends greatly on the nature of the

accounting records maintained by the respondent."  Final I&D Mem. at 11,

Appx09003.  Here, the language of Commerce's questionnaires shifted from

requesting that CPW submit its reconciliation following Commerce standard

template to asking CPW to explain why it could not generate a "single COM report

from its systems" or why it "was necessary to include the costs for the first 3 months

of 2019 in {its} reported costs."  CPW Br. at 43-44 (quoting Second Section D Suppl.

Questionnaire at 3, Appx06495).  In other words, Commerce did not repeat its initial

requests but instead asked for explanations from CPW for why it deviated from

Commerce's standard template.

CPW cooperated with Commerce's requests by providing reasonable explanations for adjusting the format of its cost reconciliation from Commerce's standard reconciliation template. First, CPW explained that it submitted its cost reconciliation for 2019 and 2020 in two exhibits so that that its databases would reconcile with its financial statements that cover fiscal year 2019. See CPW Br. at 42-45. Second, CPW explained that the products it reported in its antidumping duty response were not produced in the first three months of the POR, so CPW did not need to do any further filtering to its reconciliations once it removed the costs of non-subject merchandise. See id. at 45-46. Petitioner cannot reasonably maintain that Commerce's clarification questions do not equate to an acceptance of CPW's adjustments to its cost reconciliation, see Pet'r Br. at 21, given that Commerce relied on CPW's data in the Preliminary Results and sought no further clarification from CPW.

Contrary to the CIT's holding as echoed in the arguments by the United States, see Def. Br. at 37-38, CPW also fully complied with the requirement under 19 U.S.C. § 1677m(c) that a respondent must inform Commerce if it "is unable to submit the information requested in the requested form and manner." 19 U.S.C. § 1677m(c)(1). CPW had no reason to make such a notification because its cost reconciliation followed the methodology employed by Commerce in the initial investigation wherein Commerce verified CPW's costs as reconciled to the fiscal year. See

Rebuttal Factual Information at Ex. 1, Appx08904-08935. CPW had no reason to alert Commerce of any difficulties when it presumed that it was following Commerce's instructions.

In sum, Commerce's application of facts otherwise available, as upheld by the CIT, was unsupported by substantial evidence and otherwise not in accordance with law given that CPW submitted its cost reconciliation in the form and manner requested by Commerce.

## IV.   THE UNITED STATES AND PETITIONER FAIL TO SUPPORT COMMERCE'S APPLICATION OF AFA AGAINST CPW

Even if this Court incorrectly concurs with Commerce's finding that CPW did not submit its reconciliation in the form and manner requested by Commerce by submitting two reconciliations, this fact alone cannot lawfully support the application of total AFA against CPW. See CPW Br. at 55-58. "The focus of {19 U.S.C. § 1677e(b)} is respondent's failure to cooperate to the best of its ability, not its failure to provide requested information." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381 (Fed. Cir. 2003). Even when applying AFA, Commerce may not "disregard . . . information . . . that is not missing or otherwise deficient." Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011) (internal quotation and citation omitted); see also Hyundai Elec. & Energy Sys. v. United States, No. 2021-2312, 2022 U.S. App. LEXIS 22235, at *10-11 (Fed. Cir. Aug. 11, 2022) ("Hyundai II"). The United States' and Petitioner's focus on the

fact that <u>Zhejiang DunAn</u> and <u>Hyundai II</u> did not concern a respondent's cost reconciliation, <u>see</u> Def. Br. at 35-36; Pet'r at 23, does not change the underlying holding of these cases that neutral facts available, as opposed to total AFA, is warranted when there is only a small gap on the record and other information on the record could fill the gap.  <u>See</u> CPW Br. at 56.  Here, CPW "put forth its maximum effort" when it explained that it was necessary to submit two reconciliations as its financial statements correspond to the calendar year.  <u>Nippon Steel</u>, 337 F.3d at 1382. All Commerce needed to do to fill the gap that it identified on the record – CPW's submission of two reconciliations – was to add CPW's two reconciliations together. Such minor gap filling is analogous to where the Court found in <u>Zhejiang Dunan</u> that Commerce's application of AFA was not warranted when the sales quantities that a respondent failed to provide were not necessary to calculate a dumping margin. <u>See</u> <u>Zhejiang DunAn</u>, 652 F.3d at 1348.  The minor gap filling is also similar to the situation in <u>Hyundai II</u> where other information on the record demonstrated the reliability of a respondent's price information. <u>See</u> <u>Hyundai II</u>, 2022 U.S. App. LEXIS 22235, at *10.  Here too, Commerce had all the information it needed on the record to determine that CPW's costs reconciled and cannot hide behind AFA when CPW cooperated to the best of its ability.

The cases referenced by the United States where Commerce applied AFA against a respondent when it failed to submit a full reconciliation are distinguishable

and, thus, do not "support{}" Commerce's application of AFA in this instance. <u>See</u>
Def. Br. at 33-34 (citing <u>Hyundai Elec. & Energy Sys. Co. v. United States</u>, 466 F.
Supp. 3d 1303 (Ct. Int'l Trade 2020) (<u>aff'd</u> <u>Hyundai Elec. & Energy Sys. Co. v.</u>
<u>United States</u>, 15 F.4th 1078 (Fed. Cir. 2021) ("<u>Hyundai I</u>") and <u>Pro-Team Coil Nail</u>
<u>Enterprise, Inc. v. United States</u>, 483 F. Supp. 3d 1242 (Ct. Int'l Trade 2020) ("<u>Pro-</u>
<u>Team II</u>")).   In the administrative proceeding underlying <u>Hyundai I</u>, Commerce
applied total AFA in the preliminary results and all parties had an opportunity to
comment on Commerce's AFA determination prior to the final results. <u>See</u> 15 F.4th
at 1085.  CPW had no such opportunity here.  In the litigation underlying <u>Pro-Team</u>
<u>II</u>, the respondents did not dispute the finding by Commerce that they had failed to
complete their cost reconciliations. <u>See</u> 483 F. Supp. at 1248.  By contrast, CPW's
position throughout this proceeding has been that costs reconciled.  Further, the
United States fails to provide all the procedural background prior to the CIT's
holding in <u>Pro-Team II</u>.  In <u>Pro-Team Coil Nail Enterprise v. United States</u>, 419 F.
Supp. 3d 1319, 1336 (Ct. Int'l Trade 2019) ("<u>Pro-Team I</u>"), the CIT found that even
if cost information is missing from the record, this fact alone is not a license to apply
an adverse inference. <u>See id.</u> at 1336.  The Court remanded Commerce's application
of AFA in <u>Pro-Team I</u>, leading to the holding in <u>Pro-Team II</u> as cited to by the United
States, because Commerce "failed to account for evidence demonstrating {the
respondent's} attempts to comply with Commerce's supplemental questionnaire or

apprise the court of its reasons for nevertheless finding less than full cooperation." Pro-Team I, 419 F. Supp. 3d at 1339-40. Similarly, here Commerce failed to account for evidence demonstrating CPW's attempts to fully cooperate with Commerce by ignoring CPW's reasonable explanations that its submitted cost databases already accounted for its "double counted" costs. Given the factual distinctions from this appeal, Hyundai I and Pro-Team II do not support Commerce's application of AFA against CPW.

In sum, where at most there remains an allegedly small gap on the record, Commerce's application of total AFA was unsupported by substantial evidence and otherwise not in accordance with law given that the gap could have been filled by other record evidence demonstrating that CPW's costs reconciled. CPW would have demonstrated this fact had it been presented with an opportunity to comment on Commerce's reconciliation analysis.

## CONCLUSION AND RELIEF SOUGHT

As established above and in CPW's opening brief, this Court should reverse the judgment of the CIT sustaining Commerce's use of AFA against CPW based on Commerce's erroneous conclusion that CPW's costs did not reconcile. This Court should remand with instructions that Commerce find that CPW's costs reconciled

and use CPW's data to calculate a dumping margin of zero percent consistent with the Preliminary Results.

Respectfully submitted,

January 16, 2024

/s/ Kristin H. Mowry
Kristin H. Mowry
Jill A. Cramer
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Ste. 810
Washington, DC 20015
*Counsel to Corinth Pipeworks Pipe Industry S.A. and CPW America Co.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-2094

**Short Case Caption:** Corinth Pipeworks Pipe Industry SA v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,993 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/16/2024

Signature: /s/ Kristin H. Mowry

Name: Kristin H. Mowry